## A93A0819. PIERCE v. THE STATE.
### (433 SE2d 641)

BLACKBURN, Judge.

The appellant, Millicent Pierce, was indicted for the July 7, 1991, murder of her husband, Dr. Michael Pierce. Following a trial by jury, she was found guilty of the lesser included offense of voluntary manslaughter, and sentenced to 12 years' imprisonment. This timely appeal follows the trial court's denial of her motion for new trial.

1. In her first enumeration of error, Pierce contends that the trial court erred in admitting her statement in violation of the Fifth and Sixth Amendments of the United States Constitution and OCGA § 24-3-50. More specifically, Pierce contends that the trial court erred in ruling that she had not invoked her right to remain silent. She contends that the invocation of the right was not scrupulously honored by the officers prior to the reinitiation of questioning which resulted in the incriminating statement. We disagree.

During the taped interview of July 7, 1991 at approximately 5:20 a.m., with Investigator Keith Lee and Officer Sharp-Parker, Pierce was informed of her right to remain silent and right to counsel, and she indicated that she understood these rights. She further admitted that she killed her husband. Immediately afterwards, she stated that she was in no shape to answer the questions that had been asked of her. The interrogation ceased at 5:27 a.m. after Investigator Lee asked Pierce to submit to blood and urine tests, which she agreed to do. The interrogation resumed at 7:40 a.m., and Pierce was again informed of her right to remain silent and right to representation, at which time Pierce again indicated that she understood these rights. Although Pierce at 5:20 a.m. refused to sign a written form acknowledging that she had been informed of her right to remain silent and right to representation, at 7:40 a.m. she acknowledged in writing that she had been informed of these rights.

During a police interrogation of a suspect, " '[i]f the (person in custody) indicates *in any manner*, at any time prior to or *during questioning*, that he wishes to remain silent, the interrogation must cease.' (Emphasis supplied.)" *Hatcher v. State*, 259 Ga. 274, 276 (379 SE2d 775) (1989), quoting *Miranda v. Arizona*, 384 U. S. 436, 473-474 (86 SC 1602, 16 LE2d 694) (1966). "Although the right to silence is not protected by a per se rule of 'permanent immunity' against further police-initiated interrogation, [cit.], nevertheless, 'a suspect's request to cut off questioning serves as a complete bar to any questioning (initiated by the police) . . . for a "significant period of time" after

the request.' [Cit.]" Id. at 277.

In the case sub judice, the evidence shows that the officers ceased their questioning of the defendant shortly after she indicated that she was in no shape to answer the questions. However, "[w]e pretermit a determination whether [Pierce] equivocally or unequivocally invoked h[er] right to remain silent. We do so because we conclude that, even if [s]he did equivocally or unequivocally invoke h[er] right to remain silent, any error in admitting the [July 7, 1991] statement would be harmless, as" the statement was cumulative of the testimony given by Pierce at trial. (Citations omitted.) *Tankersley v. State*, 261 Ga. 318, 321 (2) (404 SE2d 564) (1991). See also *Mitchell v. State*, 260 Ga. 229, 230 (2) (391 SE2d 761) (1990). Further, " '[a] trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will withstand attack on appeal unless they are clearly erroneous. (Cit.)' [Cit.]" *McDaniel v. State*, 204 Ga. App. 753, 754 (1) (420 SE2d 636) (1992). Inasmuch as there is evidence to support the trial court's findings that Pierce's statement was freely and voluntarily given, we find that this enumeration is without merit.

2. Pierce further contends that the trial court erred in admitting the testimony of Investigator Dewey Brown, the chief investigator with the DeKalb County Medical Examiner's Office, in violation of OCGA § 17-7-211, the Fourteenth Amendment of the United States Constitution and the Georgia Constitution of 1983, Art. I, Sec. I, Par. I. Although OCGA § 17-7-211 (b) provides, in part, that a "defendant shall be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal," the testimony of the investigator was not admitted in the form of a scientific report as defined within the Code section. "It is well-established that the State is not required, under OCGA § 17-7-211, to furnish defendant with its expert's notes, work product, recordation of data, internal documents, or graphs. [Cits.] Thus, it becomes necessary to distinguish between those documents beyond the purview of the statute and those scientific reports which must be provided to defendant if they are to be admitted into evidence. In determining what constitutes a 'written scientific report' it has been stated that the common element is that 'each includes the examiner's findings based on scientific analysis or his or her opinion.' [Cits.]" *Roberts v. State*, 196 Ga. App. 450 (396 SE2d 81) (1990). The investigator based his testimony on the position of the victim at the time that he was shot solely upon his observation of the scene of the incident. We are satisfied that any notes that may have been compiled by Investigator Brown, are not within the purview of OCGA § 17-7-211. See also *Ramsey v. State*, 165 Ga. App. 854, 856 (2) (303 SE2d 32) (1983).

3. In her third enumeration of error, Pierce contends that the trial court erred in failing to give her requested pattern charge on statements. We disagree.

" 'It is well settled that the trial court is not obligated to instruct the jury in the exact language requested and that, where the same principle of law is covered in another instruction, failure to give the requested charge is not error.' [Cits.]" *Montgomery v. State*, 204 Ga. App. 534, 537-538 (6) (420 SE2d 67) (1992). See also *Johnson v. State*, 204 Ga. App. 246, 247 (2) (419 SE2d 107) (1992). Although the court did not charge the jury as to the effect of the police's initiation of further questioning of Pierce after Pierce invoked her right to remain silent, the trial court concluded at the *Jackson-Denno* hearing that Pierce's statement was given freely and voluntarily. As a result, the trial judge did charge the jury that "[t]o make a statement by a defendant charged in a criminal case admissible, it must have been made voluntarily and without being induced by another by the slightest hope of benefit or the remotest fear of injury." The trial court further cautioned the jury to scan the statement with care. Inasmuch as the trial court charged the jury on the correct principle of law, and counsel for Pierce failed to object to the charge as given, we conclude that the trial court's refusal to charge the jury as specifically requested by Pierce was not erroneous.

4. Lastly, Pierce contends that the trial court erred in denying her motion for directed verdict. However, a directed verdict is warranted only "[w]here there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense. . . ." OCGA § 17-9-1 (a). See also *Martin v. State*, 189 Ga. App. 483, 489 (5) (376 SE2d 888) (1988); *Cobb v. State*, 195 Ga. App. 429, 430 (2) (393 SE2d 723) (1990). Based upon Pierce's uncontradicted testimony that she shot her husband twice on the morning in question, "it cannot be said that there was no conflict in the evidence and the evidence demanded a verdict of acquittal. [Cit.]" *Martin*, supra at 489. Where the evidence authorizes a conviction, it cannot be found to have demanded a verdict of acquittal. *Milner v. State*, 159 Ga. App. 887 (1) (285 SE2d 602) (1981). Although Pierce maintains that she shot her husband in an act of self-defense, Investigator Brown stated, based upon his observations, that the victim was shot in his right temple at close range while he was slumped against the side of the bed, after Pierce had shot him initially in the chest. This testimony contradicts Pierce's version that she shot the victim the second time after he fell towards her and while he was standing in front of her. The jury considered the mitigating circumstances surrounding the death of the victim as testified to by Pierce and witnesses on her behalf, specifically the victim's

abusive treatment of Pierce and others, and returned a verdict against Pierce on the lesser included offense of voluntary manslaughter. We find that a rational trier of fact could find from the evidence adduced at trial proof of Pierce's guilt of voluntary manslaughter beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Consequently, this enumeration is without merit.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 24, 1993 —
RECONSIDERATION DENIED JULY 8, 1993 — 

*Garland, Samuel & Loeb, R. Stephen Roberts, Cathy M. Alterman*, for appellant.

*J. Tom Morgan, District Attorney, Stacy Y. Cole, Thomas S. Clegg, Assistant District Attorneys*, for appellee.