A95A2159. SIEVEKING v. THE STATE.
(469 SE2d 235)

BEASLEY, Chief Judge.

Sieveking appeals from his conviction and sentence on charges of driving under the influence of alcohol to the extent that it was less safe for him to drive, OCGA § 40-6-391 (a) (1), and making an illegal U-turn, OCGA § 40-6-121 (1).

On appeal, the State did not timely submit a brief in compliance with Rule 26 (b). Upon being ordered to file a brief, the State filed a two-page document containing a mixture of factual and legal contentions, devoid of reference to the record or citation to authority as required by Rule 27 (b) & (c). Such dereliction of duty courts contempt, Rule 7, and leaves the State virtually unrepresented.

Viewed in favor of the verdict, a roadblock had been set up and Sieveking, after passing a sign advising the roadblock was ahead, made a U-turn on a curved portion of the road before reaching the roadblock. He was followed and stopped. When the officer approached the car, he detected emission of the odor of alcoholic beverage. He asked Sieveking to perform field sobriety tests, to which he agreed. The officer administered the Horizontal Gaze Nystagmus test ("HGN") and an alco-sensor field breath test. He also had Sieveking take nine linear steps, touching heel to toe, and return to his beginning point in the same manner. An Intoximeter 3000 test was also administered but its results were suppressed because of an inadequate implied consent warning.

1. Sieveking concedes the officer could testify at trial about the results of the HGN test and that those results "show a symptom in-

dicative of, although not determinative of, the presence of alcohol." *Manley v. State*, 206 Ga. App. 281, 282 (424 SE2d 818) (1992). He contends, however, that this was as far as the officer could go and it was error to allow testimony that the results showed a certain level of impairment caused by alcohol.

The HGN test involves asking a suspect to follow an object with his eyes when it is moved horizontally near his face, watching for a jerking movement of the eyes. See *Kerr v. State*, 205 Ga. App. 624 (423 SE2d 276) (1992); *Mendoza v. State*, 196 Ga. App. 627, 628 (1), 630 (396 SE2d 576) (1990) (Deen, P. J., concurring specially). This Court's precedents do refer to "the presence of alcohol" in discussing the admissibility of HGN test results on grounds of scientific reliability. See *Lorio v. State*, 216 Ga. App. 255 (454 SE2d 164) (1995); *Manley*, supra. That is not the limit of the testimony allowed on the subject. Field sobriety tests are not designed to detect the mere presence of alcohol in a person's system, but to produce information on the question whether alcohol is present at an impairing level such that the driver is less safe within the meaning of OCGA § 40-6-391 (a) (1). See *Holcomb v. State*, 217 Ga. App. 482, 483 (2) (458 SE2d 159) (1995); *In the Interest of C. P. M.*, 213 Ga. App. 761, 763 (446 SE2d 242) (1994); *Rylee v. State*, 210 Ga. App. 314, 315 (436 SE2d 52) (1993). Mere presence of alcohol is not the issue; the quantity is needed because the issue is effect. To illustrate, if a chemical test shows a concentration of alcohol lower than 0.05 grams, there is a statutory presumption that a person is not impaired by alcohol such that it is less safe for him to drive, despite the test result showing alcohol is present. OCGA § 40-6-392 (b) (1).

Field sobriety tests such as the HGN are often "scored" with a number of "clues" indicating conditions that suggest impairment, and it is not error to inform the jury about the test results, including the "scores." *Lorio*, supra. In his testimony, Sieveking's arresting officer used the term "level of impairment" when explaining the HGN and its six "score" points. He stated a suspect's level of impairment would interfere with his ability to smoothly track the indicator with his eyes, would cause the eyes to jerk when looking at the indicator at its maximum deviation, and would affect the point at which nystagmus (jerking of the eyes) occurs. Each of these is considered a clue of impairment and is scored for each eye, making a total of six clues on the HGN test. Sieveking exhibited all six clues; four is considered an indication of impairment.

The officer was permitted to testify that, in his opinion, the suspect was under the influence of alcohol to the extent that it was less safe for him to drive. *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994). He merely explained what he had observed from the field sobriety tests and how those observations led to his opinion,

thus laying a foundation for it. The officer had undergone specialized training in DUI detection and worked with a DUI task force for two years.

Sieveking's objections affect the weight of the officer's testimony, not its admissibility. He had ample opportunity to cross-examine the officer about his training and experience and how they impacted his opinion as to impairment.

2. After testimony about the HGN and heel-to-toe test, the State asked the arresting officer whether any other tests were performed. The officer responded that an alco-sensor test was given and that Sieveking registered positive for alcohol. The State then asked what happened next and the officer testified that Sieveking was placed under arrest and given an implied consent warning, he asked that his wife be allowed to take the car, the officer then gave Sieveking's wife an alco-sensor test which she passed, and she was allowed to take the car. The State's next question related to the implied consent warning and Sieveking objected, explaining after the jury was removed that he objected on the ground that the warning and subsequent intoximeter test had been suppressed because of an invalid warning. After this issue was resolved, he objected to the earlier testimony about the alco-sensor on the ground that no foundation had been laid. See *Turrentine v. State*, 176 Ga. App. 145, 146 (1) (335 SE2d 630) (1985). He contends the court erred in overruling this objection as untimely.

Sieveking's objection, because of the absence of secondary evidence, was waived because it was made too late. *Mable v. State*, 261 Ga. 379, 381 (1) (405 SE2d 48) (1991). See *Brown v. State*, 191 Ga. App. 357, 358 (1) (381 SE2d 543) (1989). The purpose of requiring a timely objection is to avoid placing improper information before the jury. *Webster v. Brown*, 213 Ga. App. 845, 848 (3) (446 SE2d 522) (1994). Removing from a jury's consideration evidence it has heard is difficult at best and well nigh impossible after it has had time to sink in and the jury's attention is drawn to another subject. If Sieveking doubted the accuracy of the alco-sensor test, he should have objected to prevent its introduction. There was ample opportunity. During the hearing on the motion to suppress, which was conducted immediately before trial, Sieveking's counsel had stated he intended to address the foundation issue when the alco-sensor evidence was presented. He was warned to react when the State asked whether the HGN and the heel-to-toe walk were the only tests given, because the officer had testified during the suppression hearing that the only other test administered was the alco-sensor.

3. Finally, Sieveking contends the evidence was insufficient to support the conviction for driving under the influence, under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In addition to the officer's testimony that

Sieveking showed all six possible indications of impairment on the HGN test, the officer testified that he showed four of eight possible clues of impairment when performing the heel-to-toe test. The alcosensor test was positive, there was an odor of alcoholic beverage from inside the car, Sieveking's eyes were glassy, and he was unsteady on his feet. The jury was authorized to consider these as reliable indicators that Sieveking was impaired by alcohol to the extent it was less safe for him to drive. The test of *Jackson*, supra, was met.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 26, 1996 —
RECONSIDERATION DENIED FEBRUARY 16, 1996 —

*Donald C. Turner*, for appellant.

*Louise T. Hornsby, Solicitor, Marcelle A. Castillo, Assistant Solicitor*, for appellee.