## A96A2126. HAWKINS v. THE STATE.
### (476 SE2d 803)

ELDRIDGE, Judge.

Hawkins appeals from a jury's verdict and his subsequent sentence on charges of driving under the influence of alcohol to the extent that it was less safe for him to drive, OCGA § 40-6-391 (a) (1), and failure to maintain a lane, OCGA § 40-6-48; appellant was acquitted of an additional charge of driving with an unlawful alcohol concentration, OCGA § 40-6-391 (a) (4).

Viewed in favor of the verdict, on Thursday, March 16, 1995, appellant, a resident of Florida, attended a business dinner reception in downtown Atlanta at which he drank alcohol before, during, and after dinner. At about 9:15 p.m., appellant got into a late model Crown Victoria and attempted to drive to the Wyndham Hotel on Peachtree Street where appellant was staying. Appellant ended up driving westbound on I-285 near the Peachtree Industrial exit, with his car weaving from one side of the lane to the other. Appellant lost control of the car, crossed over the left traffic lane, and hit the median barricade; the Crown Victoria careened off of the cement barricade and ricocheted back into the traffic lanes, finally coming to a rest backwards in the center lane, having completed a 180 degree turn. A wrecker driver, who fortuitously happened to be behind appellant, stopped and towed the Crown Victoria to the safety lane on the right-hand side of the roadway; appellant had exited the vehicle before the towing and thereafter asked the driver to forego contacting the police on the driver's dispatch radio. However, the wrecker driver, who noticed that appellant's eyes were glassy and that he smelled strongly of alcohol, contacted the police.

Upon arrival, the police officer noted that appellant was swaying on his feet and that he smelled of alcohol. Appellant was asked to submit to a series of field sobriety tests and was told that participation in the tests was voluntary; appellant agreed to the evaluations. The officer then asked the appellant to recite the "ABCs," as well as perform the "walk and turn" and the "leg lift" evaluations. In addition, the officer conducted a horizontal gaze nystagmus examination which consisted of passing a pen in front of the appellant's eyes and determining from an observation of the movements of each eye

whether there was impairment. Appellant was not able to satisfactorily perform any of the field sobriety evaluations, including the nystagmus test which showed impairment. Thereafter, appellant was arrested, the implied consent warnings were given, and appellant agreed to a breath test; of the two samples blown into the intoximeter, the first registered a .172 and the second a .183. *Held*:

1. Appellant challenges the admissibility of field sobriety tests in general, and the horizontal gaze nystagmus (HGN) test in particular. Appellant claims that field sobriety tests have not been generally accepted in the scientific community as accurate indicators of impairment, and thus, the lack of expert foundational testimony in the case sub judice made the admission of the tests reversible error. Further, citing this Court's decision in *Manley v. State*, 206 Ga. App. 281 (424 SE2d 818) (1992), as well as the line of cases that followed the *Manley* rationale, appellant asks this Court to "come to grips" with the admissibility of field sobriety tests; appellant asserts that our decisions have failed to clearly address the foundational requirements for the admissibility of these tests, especially in instances such as the case sub judice, where a trial court does not first receive expert testimony as a foundation for admission pursuant to the standards enunciated in *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982). See *Sieveking v. State*, 220 Ga. App. 218 (469 SE2d 235) (1996); *Lorio v. State*, 216 Ga. App. 255 (454 SE2d 164) (1995); *Hassell v. State*, 212 Ga. App. 432 (442 SE2d 261) (1994); *Manley*, supra at 282; *Foster v. State*, 204 Ga. App. 632 (420 SE2d 78) (1992).

Under this same enumeration of error, appellant also contends that evidence of field sobriety tests should not be admissible until a foundation is laid regarding the proper administration of the tests and cites *Harper*, supra, as standing for this principle; moreover, appellant contends that even if a proper foundation is laid pursuant to the standards of *Harper*, field sobriety tests are still inadmissible as being irrelevant, since the tests do not aid a trier of fact in a quantitative determination of the extent of a driver's impairment in relation to the ability to drive safely.

A review of the progression of case law cited by appellant has persuaded this Court to make clear our position regarding the foundational requirements for the admissibility of field sobriety tests in general, and the HGN test in particular.

As this Court has repeatedly stated, in determining whether a given scientific principle or technique is competent evidence in a court of law, trial courts have frequently looked to see whether the technique has gained general acceptance in the scientific community; however, recognizing that problems exist in determining admissibility on this basis, including the frequent presence of a wide variation in "expert" opinion, simply "counting heads" in the scientific commu-

nity has been disproved as a method for determining admissibility. *Caldwell v. State*, 260 Ga. 278, 285 (393 SE2d 436) (1990); *Harper*, supra; *Jordan v. Ga. Power Co.*, 219 Ga. App. 690, 693 (466 SE2d 601) (1995); *Manley*, supra at 281; *Mitchell v. State*, 200 Ga. App. 146, 149 (407 SE2d 115) (1991). Instead, the determination of the admissibility of a new scientific process lies with the trial court which decides whether the procedure or technique in question has reached a stage of verifiable certainty or "rests upon the laws of nature." *Harper*, supra at 526. This determination may be based on an evaluation of expert testimony and/or an evaluation of exhibits, treatises, or opinion from other jurisdictions. Id. The significant point is that a determination as to whether a new technology or procedure should be admissible is based on all of the evidence available to the trial court, of which only one factor is the procedure's general acceptance in the scientific community.

Further, "[o]nce a [technology or] procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, *without receiving evidence*, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." (Emphasis supplied.) Id.; *Rolader v. State*, 202 Ga. App. 134, 142 (413 SE2d 752) (1991). In other words, once a procedure has been utilized for a significant period of time, and expert testimony has been received thereon in case after case, the trial court does not have to keep reinventing the wheel; a once novel technology can and does become commonplace. See Agnor, Ga. Evidence, Matters of Common Knowledge, § 16-2, pp. 475-476. Keeping these principles in mind, we turn to the merits of appellant's contentions as they relate to the facts of the case sub judice.

With regard to the "ABCs," "walk and turn," and "leg lift" field sobriety tests given appellant, the word "tests" is a misnomer; these are physical dexterity exercises that common sense, common experience, and the "laws of nature" show are performed less well after drinking alcohol. The screening of these gross motor skills is hardly the type of "scientific principle or technique" to which *Harper* referred, and this Court will not hold these physical manifestations of impairment, which could be as obvious to the layperson as to the expert, to such a standard of admissibility. *Harper*, supra at 524; *State v. Pastorini*, 222 Ga. App. 316 (474 SE2d 122) (1996); *Crawford v. City of Forest Park*, 215 Ga. App. 234 (450 SE2d 237) (1994); accord *Mendoza v. State*, 196 Ga. App. 627, 630 (396 SE2d 576) (1990) (Deen, P. J., concurring specially). Appellant's contentions regarding the subjective nature of the evaluation of these tests would be fodder for cross-examination, but would not impact on the validity of the tests themselves in detecting impairment. *Pastorini*, supra. Thus, the trial court in the case sub judice did not err in allowing the officer to

testify regarding these field sobriety tests without first requiring expert testimony as a foundation for admission.

The HGN test about which appellant complains herein is based on the well-known and medically accepted principle that nystagmus can be caused by the ingestion of alcohol: "Jerk nystagmus . . . is characterized by a slow drift, usually away from the direction of gaze, followed by a quick jerk or recovery in the direction of gaze. A motor disorder, it may be congenital or due to a variety of conditions affecting the brain, including ingestion of drugs such as alcohol and barbiturates. . . ." The Merck Manual of Diagnosis and Therapy, p. 1980 (14th ed. 1982). For over 20 years, the relationship between nystagmus and alcohol has been recognized by highway safety agencies as a tool to detect those illegally driving under the influence of alcohol. Burns & Moskowitz, Psychophysical Tests for DWI Arrest, U. S. Department of Transportation, Rep. No. DOT-HS-802-424 (1977). Further, the National Highway Traffic Safety Administration (NHTSA) has endorsed the HGN test as the most sensitive in determining alcohol impairment. Schweitz & Snyder, Field Evaluation of a Behavioral Test Battery for DWI, U. S. Department of Transportation, Rep. No. DOT-HS-806-475 (1983); see also Turkula, Drug and Alcohol Testing, § 6.06, pp. 6-12–6-14. HGN testing has been used by law enforcement in each of the 50 states. Seelmeyer, Nystagmus, A Valid DUI Test, Law and Order (July 1985), p. 29. Even the nation's premier reference manual for the defense of DUI cases recognizes the "strong correlation" between the ingestion of alcohol and the presence of nystagmus. Erwin, Defense of Drunk Driving Cases (3rd ed. 1985), § 8.15A [3]. The characteristics, theory, and scientific acceptability of HGN testing in relation to DUI cases has been discussed in numerous articles and in numerous judicial opinions. See particularly State v. Superior Court, 718 P2d 171, appendices A & B 182-184 (Ariz. 1986); State v. Nagel, 506 NE2d 285 (Ohio App. 1986); see also, e.g., Barnes, The Effects of Ethyl Alcohol on Visual Pursuit and Suppression of the Vestibulo-Ocular Reflex, 406 ACTA Otolaryngol Supp., p. 161 (Sweden 1984) (ethyl alcohol disrupted visual pursuit eye movement by increasing number of nystagmic "catch-up saccades"); Goldberg, Effects and After-Effects of Alcohol, Tranquilizers and Fatigue on Ocular Phenomena, Alcohol and Road Traffic, p. 123 (1963) (of different types of nystagmus, alcohol gaze nystagmus is the most easily observed); Zyo, Medico-Legal and Psychiatric Studies on the Alcoholic Intoxicated Offender, 30 Japanese J. of Legal Medicine, No. 3 (1976), p. 169 (recommends use of nystagmus test to determine somatic and mental symptoms of alcohol intoxication, as well as blood alcohol content).

Moreover, a review of the arguments and authority provided by appellant for his assertions regarding the acceptance, or lack thereof,

of HGN testing in the scientific community shows that appellant's sources are concerned with the proper administration of the HGN test and the possibly subjective analysis of the results of the test by law enforcement; the arguments and authority provided by appellant demonstrate no disagreement in the scientific community as to the ability of the HGN test, itself, to detect impairment.[1] Clearly HGN testing, although far from a complex procedure, may be subject to human error in its administration or interpretation; however, such potential for error does not impact on the validity of the HGN test; "[n]o procedures are infallible." *Caldwell,* supra at 287 (1) (c); *Lattarulo v. State,* 261 Ga. 124, 126 (401 SE2d 516) (1991). "An accused may always introduce evidence of the possibility of error. . . . Such evidence would relate to the weight rather than the admissibility." Id.

Therefore, we hold that the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol. Further, evidence of HGN testing has been accepted in a substantial number of Georgia courts for a substantial numbers of years, e.g., *Shipman v. State,* 221 Ga. App. 160 (471 SE2d 225) (1996); *Sieveking,* supra at 219; *Reagin v. State,* 218 Ga. App. 733 (463 SE2d 39) (1995); *Lorio,* supra at 255; *Hassell,* supra at 435; *Manley,* supra at 282; *Rawl v. State,* 192 Ga. App. 57 (383 SE2d 903) (1989); and we find that the trial court in the case sub judice did not err in admitting evidence of the HGN test without first requiring expert testimony as a foundation for its admission. *Lattarulo,* supra at 127; *Rolader,* supra at 142.

Addressing appellant's other contentions raised under this enumeration of error, we concur with appellant that field sobriety tests must be administered properly under law enforcement guidelines; however, a challenge to the administration of the tests is not the same as a challenge to the foundation for admission of the tests pursuant to *Harper,* supra. Compare *Caldwell,* supra at 286 (DNA admissibility conditioned upon proper administration in light of complex, novel area of science). A challenge to the method by which an admissible test is administered would be the subject of a timely motion or objection at trial and a subsequent analysis thereon by the trial court on a case-by-case basis. See *Pastorini,* supra; *Lattarulo,* supra at 127. The burden would be on the party raising objection to show error in the administration of the tests. See generally *Hunter v. State,* 202 Ga. App. 195, 197 (413 SE2d 526) (1991). In the case sub

---

[1] Snapper, An Assessment of Behavioral Tests to Detect Impaired Drivers, DOT-HS-806-211 (1981); Nowaczyk & Cole, Separating Myth from Fact: A Review of Research on the Field Sobriety Tests, The Champion, p. 43 (August 1995); Nowaczyk & Cole, Field Sobriety Tests: Are They Designed for Failure?, Perceptual and Motor Skills, pp. 79, 99-104 (1994).

judice, the officer testified that he had taken at least six courses on the administration of field sobriety tests, which included the HGN test, at the DeKalb County Police Academy. The officer testified that he had given the tests hundreds of times and testified in detail how he administered each field sobriety test to the appellant and how the appellant responded to each test. Appellant has shown no error in the administration of the field sobriety tests, and their admission into evidence was proper. *Sieveking*, supra at 220.

Appellant also argues that field sobriety tests are irrelevant and, thus, inadmissible. We disagree. Objective manifestations of insobriety, personally observed by the officer, are always relevant. The results of field sobriety tests, in conjunction with other factors including the physical appearance of the driver, red or glassy eyes, an unsteady stance, the presence of the odor of alcohol, the existence of an accident, and any inculpatory statements made by the driver or witnesses, all of which factors were present in the case sub judice, may form an appropriate basis for an evaluation by an officer, and ultimately a jury, as to whether a driver was impaired by alcohol to the extent that it was less safe for him to drive. *Parrish v. State*, 216 Ga. App. 832, 833 (456 SE2d 283) (1995); *In the Interest of C. P. M.*, 213 Ga. App. 761, 763 (446 SE2d 242) (1994). That these tests may have no specific, quantitative value regarding the extent of a driver's alcohol impairment would go to the weight to be given the tests and not their admissibility; thus, field sobriety tests are relevant and admissible. *Sieveking*, supra at 219.

So, in sum and pursuant to appellant's request, this Court has "come to grips" with the foundational requirements for the admission of field sobriety tests in general, and the HGN test in particular, and we hold that for the reasons outlined herein, field sobriety tests, including the HGN test, may be admitted into evidence without first obtaining expert testimony regarding the scientific validity of the tests. See *Harper*, supra at 526; *Lattarulo*, supra at 127.

2. Appellant contends that the trial court improperly restricted his rebuttal of the arresting officer's testimony; appellant claims that this occurred when the trial court refused to allow appellant's expert witness to testify that HGN testing is part of the recognized battery of tests under the NHTSA program. Appellant claims that the arresting officer was not certified under NHTSA, and thus, the trial court's ruling prevented appellant's expert from casting doubt upon the officer's ability to properly conduct an HGN test pursuant to NHTSA training. This contention is meritless.

In the case sub judice, the police officer testified that he received his training on HGN testing from the DeKalb County Police Academy; appellant's expert was unable to testify that the DeKalb County Police Academy did not utilize the NHTSA program in instructing its

officers on HGN testing. In fact, appellant's expert testified that, with regard to his own training in field sobriety testing, including HGN, he had received a "certificate in the same training as they teach at the police academies in every state." Thus, appellant's expert could not rebut the arresting officer's testimony in the manner appellant asserts before this Court, and there was no abuse of the trial court's discretion in limiting appellant's examination of his expert to relevant matters. *Park v. State*, 220 Ga. App. 215, 218 (469 SE2d 353) (1996); *Fletcher v. State*, 197 Ga. App. 112, 113 (397 SE2d 605) (1990); see *Page v. State*, 198 Ga. App. 338, 339 (401 SE2d 564) (1991).

3. Appellant contends that during the jury charge, the trial court repeatedly instructed the jury on certain facets of law, which repetition unduly prejudiced the jury against the appellant. A review of the repeated portions of the jury charge about which appellant complains demonstrates to this Court that appellant finds unduly prejudicial only those legal principles that relate to the crimes for which he was charged and the proof thereof. While appellant may have desired to minimize all reference to the law as it relates to DUI, appellant was charged with two different counts of that offense under OCGA § 40-6-391 (a) (1) and (4); certain principles of law relating to those two counts must necessarily overlap when charging the jury. Thus, reiteration in the charge was appropriate, and "we cannot say that it confused or misled the jury or in any manner resulted in an unfair statement of the law." *Brown v. State*, 142 Ga. App. 247, 248 (235 SE2d 671) (1977).

4. Appellant enumerates as error the trial court's refusal to give defense Request to Charge No. 6. However, it is well settled that where the same principle of law is covered in another instruction, the failure to give the requested charge is not error. *Turner v. State*, 216 Ga. App. 896 (456 SE2d 241) (1995). In the case sub judice, the record demonstrates that the jury was instructed as to the appropriate legal principles contained in defense Request to Charge No. 6; there was no error. *Felker v. State*, 252 Ga. 351, 364 (3) (314 SE2d 621) (1984); *Pierce v. State*, 209 Ga. App. 366 (433 SE2d 641) (1993).

5. Appellant claims as reversible error the trial court's refusal to give defense Request to Charge No. 15: "You, the jury, may acquit the accused, that is Mr. Hawkins [appellant], since a verdict of not guilty is always within the range of legal verdicts in a criminal case, notwithstanding the evidence." The trial court correctly refused to charge the jury on the principle of jury nullification. *Miller v. State*, 260 Ga. 191 (391 SE2d 642) (1990); *Briard v. State*, 188 Ga. App. 490 (373 SE2d 239) (1988).

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

Decided October 1, 1996 — 

*Spruell & Dubuc, Billy L. Spruell*, for appellant.

*Ralph T. Bowden, Jr., Solicitor, Michael D. Johnson, Walter C. Howard, Assistant Solicitors*, for appellee.