A04A1880. THE STATE v. TOUSLEY.
(611 SE2d 139)

ELLINGTON, Judge.

Dawn Denise Tousley stands accused in the State Court of Gwinnett County of driving under the influence of alcohol to the extent that it was less safe to drive, OCGA § 40-6-391 (a) (1); driving under the influence of alcohol while having an alcohol concentration of 0.08 or more, OCGA § 40-6-391 (a) (5); and failure to maintain lane, OCGA §§ 40-6-1; 40-6-48. After a hearing, the trial court granted Tousley's motion to exclude evidence regarding her performance on the horizontal gaze nystagmus (HGN) test, finding that the arresting officer failed to administer the test properly. The trial court concluded that, without the HGN test results, the arresting officer lacked probable cause to arrest Tousley for DUI and accordingly granted her motion to suppress the results of a breath test administered after the arrest. The State appeals pursuant to OCGA § 5-7-1 (a) (4). For the following reasons, we reverse the trial court's ruling to the extent it excluded the HGN test results, vacate the order suppressing the breathalyzer test results, and remand.

Because the trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. *Monas v. State*, 270 Ga. App. 50, 52 (2) (606 SE2d 80) (2004). When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Id. When the evidence is uncontroverted and no question of witness credibility is presented, "the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). "With mixed questions of fact and law, [the appellate court] accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts." (Citation omitted.) *Morrow v. State*, 272 Ga. 691, 693 (1) (532 SE2d 78) (2000).

Viewed in the light most favorable to the trial court's findings, the record shows the following facts. At approximately 11:50 p.m. on

February 21, 2003, an officer observed the wheels of the vehicle Tousley was driving cross the lane divider. The officer activated his lights, which also activated the patrol car's videocamera. The officer then observed Tousley's wheels cross the lane divider a second time and saw her flash her high beams at the car in front of her, which the officer interpreted as a signal that Tousley wanted to travel faster than that car. In response to the officer's signal, Tousley pulled over in a parking lot.

When the officer approached Tousley's car, he noticed a strong odor of alcohol coming from Tousley's breath. Tousley complied with the officer's request for her license and proof of insurance. Initially, Tousley denied she had been drinking but later admitted she had had two beers. According to the officer's observations, Tousley's face was not flushed; her eyes were not bloodshot, although they were "watery"; her speech was not "slurred, thick, or mumbled"; she walked normally; did not fumble with her license; and her behavior and demeanor were otherwise "normal." The officer administered the HGN test to Tousley and determined that Tousley gave all of the six clues for intoxication. The officer then conducted the alco-sensor test, which was positive for the presence of alcohol.

Based on Tousley's failure to maintain her lane while driving, evidence that she had consumed alcohol (the odor, the positive alco-sensor, and her admission), and the results of the HGN test, the officer concluded Tousley was intoxicated to the extent it was less safe for her to drive. The officer placed Tousley under arrest for DUI; Tousley later consented to a breathalyzer.

At the hearing on Tousley's evidentiary motion, the officer testified about his training in administering the standardized HGN test, including the standardized field sobriety course and several advanced DUI seminars. The officer also testified about his experience administering and scoring HGN tests approximately 200 times. The officer described the three components of the standardized HGN test: lack of smooth pursuit, distinct nystagmus at maximum deviation, and angle of onset of nystagmus prior to 45 degrees. Each component of the standardized HGN test can yield one clue for each eye, for a total possible score of six clues. The officer testified that, according to Georgia's DUI manual, if an officer does not perform an HGN test in the prescribed way then the validity of the results will be compromised. The officer conceded that in Tousley's case he did not perform the HGN test exactly as he had been trained to do in that he failed to ask Tousley if she wore contacts or eyeglasses. The officer testified that during the "maximum deviation" component of the HGN test an officer must hold the stimulus at the maximum point for at least four seconds because "some people['s eyes] may bounce before four seconds and that would give [the officer] an incorrect clue." After reviewing

the videotape, the officer testified that he believed he did hold the stimulus at the maximum deviation for a minimum of four seconds, in accordance with law enforcement guidelines.

From its review of the videotape, however, the trial court found that the officer made "two passes within the whole sequence of passes that were in a range of three to four seconds where the pen was held out. . . . [There was] perhaps one where the pen was held out for a total of four seconds in a stationary position." The trial court concluded that the officer was not "keeping [the stimulus] out long enough" and, based on this, "the HGN test could not be used." Considering only Tousley's driving and the evidence of the presence of alcohol (the odor on her breath and the results of the alco-sensor), the trial court concluded that the officer lacked probable cause to arrest Tousley for DUI. The trial court accordingly granted Tousley's motion to suppress the breathalyzer results.

1. The State contends that as a matter of law any errors in the administration of an HGN test go only to the weight of the results, and not to their admissibility, and that the trial court in this case therefore erred in excluding the results because of such errors.

(a) *The foundation for the admission of evidence based on a scientific principle or technique.* We note initially that in Georgia testimony regarding a detainee's performance on an HGN test is considered a special kind of evidence, specifically, evidence based on a scientific principle or technique. *State v. Pastorini*, 222 Ga. App. 316, 319 (474 SE2d 122) (1996).[1] The foundation for evidence based on a scientific principle or technique requires two findings regarding the evidence's reliability: such evidence is admissible upon a showing by the party offering the evidence[2] that (1) "the general scientific principles and techniques involved . . . are valid and capable of producing reliable results[,]" and (2) the person performing the test "substantially performed the scientific procedures in an acceptable manner." (Citations omitted.) *Johnson v. State*, 264 Ga. 456, 458 (5) (448 SE2d 177) (1994) (DNA testing). See also *Pruitt v. State*, 270 Ga.

---

[1] Such evidence is sometimes called "novel scientific evidence," *Caldwell v. State*, 260 Ga. 278, 285 (1) (b) (393 SE2d 436) (1990), or "scientific test evidence," *Home Depot U.S.A. v. Tvrdeich*, 268 Ga. App. 579, 583, n. 10 (602 SE2d 297) (2004) (discussing *Carr v. State*, 267 Ga. 701, 702-703 (1) (482 SE2d 314) (1997), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (515 SE2d 155) (1999)).

[2] In the context of evidentiary foundations,

the most important procedural rule is that the proponent of an item of evidence must ordinarily lay the foundation before formally offering the item into evidence. . . . Whenever [e]vidence law makes proof of a fact or event a condition to the admission of an item of evidence, that fact or event is part of the foundation for the evidence's admission.

Edward J. Imwinkelried et al., Criminal Evidentiary Foundations, Chapter 1 (B) (1), pp. 1-2 (1997).

745, 749 (4) (514 SE2d 639) (1999) (accord).

A seminal case in the application of the first component of the foundation for the admission of evidence based on a scientific principle or technique was *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982). In *Harper v. State*, the Supreme Court of Georgia explained that evidence based on a scientific principle or technique is admissible only if the science underlying the evidence "is a phenomenon that may be verified with such certainty that it is competent evidence in a court of law." Id. at 524 (1). The Court noted that trial courts making this threshold determination "have frequently looked to see whether the technique has gained general acceptance in the scientific community which recognizes it." (Citations omitted.) Id. at 524-525 (1). The Court articulated this standard for Georgia: in ruling on whether evidence based on a scientific principle or technique will be admitted, "it is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure 'rests upon the laws of nature.'" (Footnote omitted.) Id. at 525 (1). "Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." Id. at 526 (1).

With regard to the importance of the second component of the foundation, the requirement that the person performing the test "substantially performed the scientific procedures in an acceptable manner,"[3] one treatise explains:

> If the basic science and techniques used by the expert are reliable, the fact that the expert's conclusions are weak or subject to a certain margin of error usually goes to weight, not admissibility. But if the expert substantially departed from principles and procedures that are the basis for the evidence's usual reliability, the evidence should be declined. For example, although the basic principles and procedures for DNA typing have reached a scientific stage of verifiable certainty, this presumes that the expert uses the accepted principles and procedures in the manner that produces the technique's reliability. If the expert significantly departs from these principles or procedures, he is doing something other than established, approved DNA typing.

---

[3] *Johnson v. State*, 264 Ga. at 458 (5).

(Punctuation and footnotes omitted.) Paul S. Milich, Ga. Rules of Evidence, § 15.9, p. 311 (2nd ed.). Like DNA test results, HGN test results are evidence based on a scientific principle or technique and, consequently, are subject to this two-part foundation.[4]

(b) *Application of the foundation for the admission of evidence based on a scientific principle or technique to HGN tests.*

(i) With regard to the first component of this foundation for the scientific procedure at issue here, we have held that "the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community" meeting the *Harper v. State* standard[5] and "is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." (Citation omitted.) *State v. Pierce*, 266 Ga. App. 233, 237 (2) (596 SE2d 725) (2004). See also *Kirkland v. State*, 253 Ga. App. 414, 416 (559 SE2d 161) (2002) (HGN testing is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community); *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996) (accord). Because HGN testing has reached this level of acceptance, a trial court may judicially notice, without receiving evidence, that the standardized HGN test has been established with verifiable certainty. *Hawkins v. State*, 223 Ga. App. at 38 (1). In other words, the first component of the foundation for the admission of scientific evidence, that is, that "the scientific principle and techniques . . . are valid and capable of producing reliable results,"[6] is presumptively satisfied for the standardized HGN test. It follows that a trial court should deny a motion in limine or objection at trial which argues that, by failing to offer

---

[4] For the foundation required for HGN test results in other states, see *State v. City of Mesa*, 799 P2d 855, 858 (Ariz. 1990) (HGN testing satisfies the test for scientific evidence; foundation for admitting specific results is limited to describing the officer's education and experience in administering the test and showing that proper procedures were followed); *State v. Commins*, 850 A2d 1074, 1079 (I) (Conn. App. 2004) (to introduce evidence of HGN test results, state must show HGN testing satisfies the criteria for admission of scientific evidence, officer was qualified to administer and to grade the test, and the test was conducted in accordance with relevant procedures); *Cooper v. State*, 761 NE2d 900, 903 (Ind. App. 2002) (foundation for admitting specific results consists of describing the officer's education and experience in administering the test and showing that the procedure was properly administered); *State v. Scott*, 606 NE2d 1023, 1024-1025 (Ohio App. 1992) (HGN testing is reliable; the foundation for admitting results consists of showing the officer's knowledge of the test, his training, and his ability to interpret his observations and showing the actual technique used by the officer in administering the test); *Quinney v. State*, 99 SW3d 853, 857-858 (Tex. App. 2003) (HGN testing satisfies the test for scientific evidence; foundation for admitting specific results consists of showing the officer is state certified to administer the test and followed the procedures set out in the National Highway Traffic Safety Administration (NHTSA) standardized field sobriety testing manual). See generally Horizontal Gaze Nystagmus Test: Use in Impaired Driving Prosecution, 60 ALR4th 1129 (2004).

[5] *Harper v. State*, 249 Ga. at 523-526 (1).

[6] *Johnson v. State*, 264 Ga. at 458 (5).

expert testimony regarding the scientific validity and reliability of the HGN test generally, the State failed to lay the foundation for the evidence. *State v. Pierce*, 266 Ga. App. at 237 (2); *Kirkland v. State*, 253 Ga. App. at 416; *Hawkins v. State*, 223 Ga. App. at 38 (1).

(ii) Although a trial court may judicially notice that the standardized HGN test generally has been established with verifiable certainty, the State, as the party offering the evidence, must still satisfy the second component of the foundation, that is, that the tester "substantially performed the scientific procedures in an acceptable manner."[7] As we have held, "field sobriety tests must be administered properly under law enforcement guidelines." *Hawkins v. State*, 223 Ga. App. at 38 (1). Accordingly, even though HGN testing *generally* is admissible under *Harper v. State*, we have recognized that a defendant may, by a timely motion or objection at trial, challenge the method by which the HGN test was administered to him or her. *State v. Pastorini*, 222 Ga. App. at 319; *Hawkins v. State*, 223 Ga. App. at 38 (1).[8] In ruling on whether an HGN test was administered properly under law enforcement guidelines, our courts have considered whether the arresting officer was sufficiently trained to give the test, whether the officer was experienced in administering the test, whether the

---

[7] Id.

[8] In *Hawkins v. State*, we recognized "that field sobriety tests must be administered properly under law enforcement guidelines" and that "a challenge to the method by which an admissible test is administered would be the subject of a timely motion or objection at trial and a subsequent analysis thereon by the trial court on a case by case basis." 223 Ga. App. at 38 (1). We cautioned, however, that "a challenge to the administration of the tests is not the same as a challenge to the foundation for admission of the tests pursuant to *Harper [v. State]*" and stated, "[t]he burden would be on the party raising objection to show error in the administration of the tests." Id. We wish to clarify here when we said "a challenge to the administration of the tests is not the same as a challenge to the foundation for admission of the tests pursuant to *Harper [v. State]*," we were addressing only the *first* component of the foundation for evidence of an HGN test, the reliability of the procedure or technique generally. As discussed above, a challenge to the administration of a scientific test *is* the same as a challenge to the *second* component of the foundation for admission of test results. See Division 1 (a), (b) (ii), supra. To reiterate, the State, as the party offering the evidence, must show that the officer "substantially performed the scientific procedures in an acceptable manner," that is, "properly under law enforcement guidelines." The burden to show error in the administration of the tests shifts to the defendant, as the party raising a foundational objection, only after the State fully satisfies its foundational burden. See Edward J. Imwinkelried et al., Criminal Evidentiary Foundations, supra. To the extent that our opinion in *Hawkins v. State* can be read to suggest that HGN test results are not subject to the foundational requirement that the tester substantially performed the scientific procedures in an acceptable manner, we take this opportunity to limit that statement of the law, consistent with this opinion. To the extent this misstatement was incorporated into our later opinions, including *State v. Pierce*, 266 Ga. App. at 238 (2), *Lancaster v. State*, 240 Ga. App. 359, 362-363 (3) (522 SE2d 30) (1999), and *Tuttle v. State*, 232 Ga. App. 530, 533 (3) (502 SE2d 355) (1998), we take this opportunity to limit those opinions as well.

officer administered the test according to the standardized techniques, and whether the officer scored or interpreted the test properly. *Tuttle v. State*, 232 Ga. App. 530, 533 (3) (502 SE2d 355) (1998); *Sieveking v. State*, 220 Ga. App. 218, 219-220 (1) (469 SE2d 235) (1996). To show that the officer substantially performed the HGN test in an acceptable manner, the State may have the arresting officer testify both as a fact witness, regarding how he or she administered and interpreted the test, and as an expert witness, giving an opinion that he or she administered and interpreted the test properly under law enforcement guidelines. *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998); *Sieveking v. State*, 220 Ga. App. at 219-220 (1).

In this case, the trial court excluded the HGN test results after finding the officer failed to administer the test in accordance with the applicable guidelines. Although the trial court's specific findings are not entirely clear from the appealed order or from the hearing transcript, the record suggests the trial court found fault with the officer's administration of the "maximum deviation" component of the HGN test, which can, and in this case did, account for two out of the six possible clues of intoxication under law enforcement guidelines for the HGN test. The record does not show that the trial court found any error with regard to the remaining two components of the HGN test, which can, and in this case did, account for four out of the six clues. Under law enforcement guidelines, a score of four out of six clues on an HGN test constitutes evidence of impairment. *Sieveking v. State*, 220 Ga. App. at 219-220 (1). Adopting the trial court's apparent finding of fact that the officer failed to perform the maximum deviation component of the HGN test according to law enforcement guidelines, the record shows that the State nonetheless laid the foundation for admitting evidence of the HGN test results by eliciting testimony showing that the officer was sufficiently trained and experienced in administering the test according to the standardized techniques and that the officer properly administered and interpreted the test with regard to four of the clues he found. Accordingly, the record does not support a finding that the officer who performed the standardized HGN test in this case failed to substantially comply with applicable law enforcement guidelines. We therefore reverse the trial court's ruling excluding evidence of the HGN test administered to Tousley. Cf. *State v. Pastorini*, 222 Ga. App. at 319 (2) (affirming exclusion of HGN test results based on "ample evidence from which the trial court could have determined that the test's administration was invalid").[9]

---

[9] See *Compton v. State*, 120 SW3d 375, 378-379 (A) (1) (Tex. App. 2003) (although the standardized techniques for the maximum deviation component of the HGN test mandates that

(c) Because the State's enumeration of errors raises the issue of arguments which go to the weight, rather than the admissibility, of HGN test results, we note that after evidence regarding HGN test results is properly admitted, a defendant may attempt to persuade the factfinder not to assign the results much weight, as by attacking the reliability of HGN testing generally or the reliability of the particular results in his or her case. "Admissibility of evidence is to be decided by the judge. The weight to be given evidence, once admitted, is for the [factfinder]." (Citation and punctuation omitted.) *Ross v. State*, 262 Ga. App. 323, 328 (4) (585 SE2d 666) (2003). See generally Jack Goger, Daniel's Georgia Handbook on Criminal Evidence, §§ 1-22; 1-34 (2004 ed.).

To attack the reliability of HGN testing generally, a defendant may offer evidence to show that in practice HGN testing is prone to human error. As we have observed,

> [c]learly HGN testing, although far from a complex procedure, may be subject to human error in its administration or interpretation; however, such potential for error does not impact on the validity of the HGN test [generally]; no procedures are infallible. An accused may always introduce evidence of the possibility of error.

(Citations and punctuation omitted.) *Hawkins v. State*, 223 Ga. App. at 38 (1). Such evidence of the *possibility* of error goes only to the weight of the test results, not to their admissibility. *Tuttle v. State*, 232 Ga. App. at 533 (3); *Druitt v. State*, 225 Ga. App. 150, 153 (2) (483 SE2d 117) (1997); *Hawkins v. State*, 223 Ga. App. at 38 (1). In addition, a ruling that a particular HGN test was administered well enough to meet the threshold for admissibility[10] does not preclude a defendant from arguing that the factfinder should, because of errors in the administration or interpretation of the test, assign less weight

---

the stimulus be held stationary for a minimum of four seconds, the time taken to appropriately position the eyes in preparation for each four-second hold may vary; accordingly, the total time given in Texas' DWI detection manual for administration of the maximum deviation component of the HGN test is just an approximation; "[a]ny variation in the time taken to appropriately position the eyes would have no effect on the reliability of this test and cannot form the basis for excluding the results from the evidence presented at trial"; affirming denial of the defendant's motion to exclude the HGN test results); *State v. Dohner*, 2004 WL 3090398 (Ohio App. 2004) (an officer was not required under the NHTSA standards to administer the HGN test while the detainee was standing; reversing order granting defendant's motion to suppress HGN test results). We note that the State of Ohio has provided by statute that field sobriety tests will be admissible, inter alia, if the State shows by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards. Ohio Statutes § 4511.19 (D) (4) (b).

[10] See Division 1 (b) (ii), supra.

to the results. See *Dougherty v. State*, 259 Ga. App. 618, 621-622 (1) (c) (578 SE2d 256) (2003) (when breathalyzer results are properly admitted, "[a] defendant remains free to challenge the weight and credibility of that evidence before the [factfinder]") (footnote omitted).

2. The State contends the trial court erred when it granted Tousley's motion to suppress the breath test results. After excluding the HGN test results, the trial court in this case found the remaining evidence of impairment, that is, Tousley's driving, the odor of alcohol on her breath, and the positive alco-sensor, did not amount to probable cause to arrest.

> The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. Sufficient probable cause to conduct a DUI arrest only requires that an officer have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely.

(Citation omitted.) *Malone v. State*, 261 Ga. App. 420, 421 (582 SE2d 561) (2003). See OCGA § 17-4-20 (a) ("[a]n arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant if the offense is committed in such officer's presence or within such officer's immediate knowledge"). In determining whether an officer had probable cause to arrest a defendant, "the totality of the circumstances must be considered." (Citation omitted.) *Fortson v. State*, 247 Ga. App. 533, 535 (1) (544 SE2d 719) (2001). Because the trial court erroneously failed to consider the HGN test results when deciding whether the officer had probable cause to arrest Tousley, as we held in Division 1 (b) (ii), supra, we vacate the trial court's order granting Tousley's motion to suppress the breathalyzer results and remand this case for further proceedings.

*Judgment vacated and case remanded. Andrews, P. J., and Miller, J., concur.*

DECIDED MARCH 3, 2005.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Gary S. Vey, Kristal A. Holmes, Assistant Solicitors-General*, for appellant.

*Mickey G. Roberts*, for appellee.