A10A0119. HARRIS v. THE STATE.
(689 SE2d 91)

JOHNSON, Presiding Judge.

Following a bench trial, Rodney Harris was convicted of driving under the influence of alcohol per se and to the extent he was a less safe driver. He appeals the trial court's denial of his motion to suppress. We find no error and affirm.

Because the trial court sits as the trier of fact when ruling on a motion to suppress, its findings based upon any conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them.[1] When reviewing a trial court's order on a motion to suppress, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous.[2] "As a reviewing court, we must accept the factual and credibility determinations and inferences drawn by the trier of fact, even if we disagree with them, as long as there is evidence in the record to support the trial court's findings."[3]

Viewed in that light, the evidence shows that a police officer observed Harris driving erratically. During the mile or mile and a half that the officer followed Harris, Harris' speed of travel fluctuated between 30 and 60 miles per hour, and his car weaved from the fog line to the center line several times. The officer initiated a traffic stop. When he approached Harris' vehicle, the officer noticed a strong odor of alcohol coming from within the vehicle. The officer asked Harris for his driver's license, and Harris removed a credit or debit card twice before finally producing his license. When the officer

---

[14] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); *Mosier v. State*, 223 Ga. App. 75, 76 (476 SE2d 842) (1996).

[1] *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

[2] Id.

[3] *Laseter v. State*, 294 Ga. App. 12, 13 (1) (668 SE2d 495) (2008).

asked Harris if he had anything to drink, Harris replied that he had a few beers at a friend's house. The officer asked Harris to step out of the vehicle, and Harris had trouble maintaining his balance, using the vehicle to steady himself when he exited the car. The officer radioed a second officer to come to the scene and administer field sobriety evaluations.

Within a few minutes, the second officer, who had specialized training and experience in administering field sobriety evaluations, arrived at the scene. He smelled a strong odor of alcohol coming from Harris' person and his breath. He also noticed that Harris' eyes were red and watery. Harris told the officer that he had consumed two or three beers at a friend's house earlier in the evening. According to the officer, Harris was not slurring his words and he was able to follow directions. Harris agreed to submit to voluntary field sobriety evaluations.

Harris suffers from cerebral palsy, a muscular disorder. He informed the officers of his condition, but did not report any other problems with his eyes. The second officer performed the horizontal gaze nystagmus ("HGN") test. He had to stop and start the evaluation multiple times:

> It took several attempts for him to properly follow my stimulus, which at the time was my finger. I had to attempt several times to get him to hold his head still and also as I moved to his left he'd be able to follow it so far and then he'd start looking over towards my like right shoulder and not looking at my finger.

The officer admitted he had never performed this evaluation on an individual with cerebral palsy, and that there are a number of things, including the strobe lights from the police car, that can throw off the results of the HGN, but he further indicated that he did not observe any problems with the police strobe lights in this case. The officer testified that he found four of the six clues to indicate impairment.

After Harris declined to perform the other field sobriety tests due to his cerebral palsy, the officer administered a portable alco-sensor, and the results were positive for alcohol. Based on his erratic driving, the odor of alcohol, Harris' admission of drinking, his performance on the HGN test, and the results of his alco-sensor test, the officers arrested Harris for driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (1), (5).

Harris contends his motion to suppress should have been granted because the police incorrectly performed the HGN test, thereby rendering the test unreliable to support probable cause to arrest Harris. According to Harris, absent the HGN test, the only

evidence the officers had of impairment was an odor of alcohol and Harris' admission that he had been drinking, and that evidence was insufficient to establish probable cause. We disagree with both assertions.

Harris first contends the results of the HGN test should have been excluded because they were unreliable. Evidence of HGN test results is admissible if the party offering the evidence shows that (a) the general scientific principles and techniques involved are valid and capable of producing reliable results and (b) the person performing the test substantially performed the scientific procedure in an acceptable manner.[4] Harris agrees that the test generally meets the criteria in section (a), but argues that the officer incorrectly performed the HGN test on him given his medical condition and that the results are therefore unreliable. While we are sympathetic to Harris' condition, Harris, as the objecting party, had the burden of showing error in the administration of the HGN test.[5] He has failed to meet this burden. Harris has presented no scientific evidence or testimony to establish the unreliability and thus the inadmissibility of HGN test results when the HGN test is given to an individual with cerebral palsy. In any event, such matters would go to the weight of the evidence and not its admissibility.[6]

To determine the sufficiency of an officer's performance of the HGN test, this Court has considered whether the arresting officer was sufficiently trained and experienced, whether the test was performed according to the standardized techniques, and whether the officer scored the test properly.[7] In this case, the officer administering the HGN test testified that he had received specialized training in field sobriety tests and that he had even more classes in addition to those mentioned to learn how to properly perform the HGN test. Harris even stipulates in his appellate brief that the officer was sufficiently trained to give the test.

While Harris argues that the officer did not perform the test according to the standardized techniques, he has not indicated where in the record we can find the guidelines that the officer purportedly failed to follow.[8] Contrary to Harris' contention, the officer never admitted he performed the test improperly. The officer merely testified on cross-examination regarding factors other than alcohol that could cause nystagmus and create false results. The officer's performance was also captured on video, and this video was admitted into

---

[4] *Tousley*, supra at 876 (1) (a).
[5] See *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996).
[6] See *Laseter*, supra at 15-16 (1).
[7] See *Tuttle v. State*, 232 Ga. App. 530, 533 (3) (502 SE2d 355) (1998).
[8] Id.

evidence. Harris has failed to show error on the record in the court's finding that the test was properly administered. The trial court did not err in denying Harris' motion to suppress his HGN test results.

In addition, contrary to Harris' contention, the officers still had probable cause to arrest Harris for driving under the influence of alcohol even without the HGN test results. Harris argues that without the HGN test results, the only remaining evidence of impairment is the smell of alcohol on his person and his admission of drinking, which is insufficient to support probable cause to arrest him for driving while under the influence of alcohol. However, the officers did not rely solely on that evidence in deciding to arrest Harris for driving under the influence of alcohol. According to the record, an officer noticed Harris driving erratically, both officers smelled alcohol emanating from Harris, one of the officers noted that Harris' eyes were red and watery, when asked for his license Harris twice pulled out his debit or credit card rather than his driver's license, and Harris' alco-sensor test was positive. "Considering the other evidence of [Harris'] impairment, admission of the HGN test results was harmless."[9] Even in the absence of the field sobriety test, the evidence was sufficient to support the trial court's conclusion that the officers had probable cause to arrest Harris for driving under the influence of alcohol.[10] The trial court did not err in denying Harris' motion to suppress.

*Judgment affirmed. Miller, C. J., and Phipps, J., concur.*

DECIDED DECEMBER 21, 2009.

*Suesan A. Miller*, for appellant.
*Charles A. Spahos, Solicitor-General, Brian M. Johnston, Assistant Solicitor-General*, for appellee.

---

[9] Id. at 534 (3).
[10] See *Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004).