## A10A0651. DUNCAN v. THE STATE.
(699 SE2d 341)

DOYLE, Judge.

A Coweta County jury found Don Duncan guilty of driving under the influence of alcohol to the extent that he was a less safe driver ("DUI alcohol"),[1] driving under the influence of drugs to the extent it was less safe for him to drive ("DUI drugs"),[2] driving under the combined influence of alcohol and drugs ("DUI combined substances"),[3] driving with an expired driver's license,[4] driving with an expired tag,[5] and operating a motor vehicle without proper headlights.[6] Duncan appeals, challenging the sufficiency of the evidence to support the three DUI convictions and arguing that the trial court erred by admitting evidence regarding the horizontal gaze nystagmus ("HGN") test and the testimony of the State's expert. We affirm, for the following reasons.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Duncan] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

So viewed, the evidence shows that on August 11, 2008, Corporal Chris Segrest of the Coweta County Sheriff's Department noticed Duncan's truck, which had no operating headlights, and followed it for approximately two miles. After Corporal Segrest saw Duncan's vehicle cross the centerline, he ran Duncan's tag and learned that it

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-391 (a) (2).

[3] OCGA § 40-6-391 (a) (4).

[4] OCGA § 40-5-20 (a).

[5] OCGA § 40-2-8 (a).

[6] OCGA § 40-8-22.

[7] (Punctuation omitted.) *Duren v. State*, 252 Ga. App. 257, 258 (555 SE2d 913) (2001). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

was expired. Corporal Segrest then initiated a traffic stop.

Corporal Segrest asked to see Duncan's driver's license, and Duncan complied, producing an expired license. The officer noticed that Duncan's eyes were bloodshot and glassy and exhibited nystagmus — an involuntary jerking — in both eyes, and he detected a slight odor of alcohol and a strong odor of cologne emanating from Duncan. Corporal Segrest then asked Duncan to exit the truck, noting that he seemed unsteady on his feet. The officer administered the HGN test on Duncan and observed six out of six possible "clues" for nystagmus.[8] During the test, Duncan initially followed the officer's pen with his head, instead of just with his eyes as the officer instructed him to do. Corporal Segrest asked Duncan to perform the walk and turn and the one-leg stand field tests, but Duncan became angry and refused, insisting that the officer allow him to go home or take him to jail. When Corporal Segrest asked him how many drinks he had consumed, Duncan initially denied having any alcohol, but then admitted that he had consumed a beer. Duncan also stated that he had taken Lorcet for his back pain. Based on his observations, Corporal Segrest concluded that Duncan was driving under the influence of alcohol and/or drugs such that he was a less safe driver and placed him under arrest.[9] Corporal Segrest read Duncan the implied consent notice for individuals over 21 years of age, but Duncan would not agree to a State-administered blood test. After Duncan's arrest, the police searched his truck and discovered an empty prescription bottle of hydrocodone.[10]

1. Duncan contends that the evidence presented at trial was insufficient to authorize the jury to find him guilty of the three DUI charges. Duncan does not dispute the following facts: he drove without his headlights on; his eyes were glassy and exhibited nystagmus; he had a strong odor of cologne and a slight odor of alcohol; the police found an empty prescription bottle for hydrocodone in his truck following his arrest; he told Corporal Segrest that he had consumed a beer and Lorcet that night; he refused to perform the walk and turn and one-leg stand sobriety tests, instead insisting that the officer let him go home or take him to jail; and he would not agree to undergo a blood test. Instead, Duncan argues that although such evidence might establish the presence of alcohol, it is insuffi-

---

[8] The HGN test "is based upon the principle that horizontal gaze nystagmus, an involuntary movement of the eyes, can be caused by the ingestion of alcohol." (Citation omitted.) *Waits v. State*, 232 Ga. App. 357, 360 (3) (501 SE2d 870) (1998).

[9] At trial, the State played the DVD from Corporal Segrest's patrol car, which depicted the traffic stop.

[10] The label on the bottle indicated that the 90-pill prescription was filled on July 8, 2008, approximately 34 days prior to Duncan's arrest.

YALE LAW LIBRARY

cient to sustain his conviction because it does not show that he was impaired. We disagree.

> Methods of proof to show impairment may include evidence of (i) erratic driving behavior, (ii) refusal to take field sobriety tests and the breath or blood test, and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that the alcohol made it less safe for the defendant to drive. Here the State used all three methods.[11]

In determining whether a driver is impaired by alcohol or other substances, the manner of his driving may be considered as a factor if there is evidence that he has consumed alcohol or drugs.[12] "For example, traffic violations may suggest the negative influence of intoxication on the operation of the vehicle."[13] Here, the evidence showed that Duncan, who did not have a current driver's license, was driving a truck with an expired tag without using his headlights and was weaving, according to Corporal Segrest. Duncan also refused to submit to certain field sobriety tests and a blood test. Finally, Corporal Segrest testified that he believed that Duncan was under the influence of drugs and/or alcohol to the extent it was less safe for Duncan to drive based on observations, including the odor of cologne and alcohol coming from Duncan, his glassy, bloodshot eyes which exhibited nystagmus, and his verbal aggression. Given this evidence, the jury was authorized to find Duncan guilty of the three DUI charges.[14]

2. Duncan argues that the trial court erred by admitting evidence regarding the HGN test, including Corporal Segrest's testimony regarding the field test and its results.

In Georgia,

> [t]he foundation for evidence based on a scientific principle or technique requires two findings regarding the evidence's reliability: such evidence is admissible upon a showing by the party offering the evidence that (1) the general scientific

---

[11] (Citation and punctuation omitted.) *Jones v. State*, 273 Ga. App. 192, 193 (1) (614 SE2d 820) (2005).

[12] See id. at 193 (1) (a).

[13] (Punctuation omitted.) Id.

[14] See *Horne v. State*, 286 Ga. App. 712, 713-714 (1) (a) (649 SE2d 889) (2007) (jury's guilty verdict for DUI less safe was authorized based on evidence that the defendant committed traffic violations, including failure to maintain lane and that he refused to submit to chemical testing, along with the opinion testimony of the arresting officer that the defendant was impaired); *Jones*, 273 Ga. App. at 193 (1) (a).

> principles and techniques involved are valid and capable of producing reliable results and (2) the person performing the test substantially performed the scientific procedures in an acceptable manner.[15]

Georgia recognizes the HGN test as "an accepted, common procedure that has reached a state of verifiable certainty in the scientific community meeting the *Harper v. State*[16] standard and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol."[17] Nevertheless, the State "must still satisfy the second component of the foundation, that is, that the tester 'substantially performed the scientific procedures in an acceptable manner.' "[18]

(a) Prior to trial, Duncan moved to exclude Corporal Segrest's testimony regarding the HGN test, arguing that the officer did not properly administer the test as he was trained to do. At the hearing, Corporal Segrest testified that he attended a three-day course, which included a hands-on component, in administering the HGN test, after which he received certification. Corporal Segrest admitted, however, that Duncan exhibited "resting" nystagmus while sitting in his vehicle before the HGN test was administered, which can be an indication that a person has a medical condition that causes the nystagmus, as opposed to an impairment. The officer also conceded that if he performed the HGN test with the strobe light from his patrol car flashing as depicted in the DVD of the traffic stop, it would have been contrary to his training and could have affected the test results. Finally, Corporal Segrest testified that although he was trained to perform seven "passes" in each of a detainee's eyes to detect the six possible clues, he only performed two passes in each test before concluding that Duncan exhibited six indicators of nystagmus consistent with impairment.[19] Nevertheless, Corporal Segrest testified that he performed the HGN test on Duncan "in conjunction [with] or substantially how [he was] trained." Following the hearing, the trial court denied Duncan's motion to exclude evidence regarding the HGN test, concluding that Duncan's arguments regarding the improper administration of the test went toward the weight of the evidence, not the admissibility.

---

[15] (Punctuation and footnotes omitted.) *State v. Tousley*, 271 Ga. App. 874, 876 (1) (a) (611 SE2d 139) (2005).

[16] 249 Ga. 519 (292 SE2d 389) (1982).

[17] (Punctuation omitted.) *Tousley*, 271 Ga. App. at 878 (1) (b) (i).

[18] Id. at 879 (1) (b) (ii).

[19] Corporal Segrest administered the HGN test to Duncan twice.

YALE LAW LIBRARY

When ruling on whether a HGN test was administered properly under law enforcement guidelines, our courts have considered whether the arresting officer was trained sufficiently to give the test, experienced in administering the test, administered the test according to the standardized techniques, and scored or interpreted the test properly. Under law enforcement guidelines, a score of four out of six clues on a HGN test constitutes evidence of impairment. Further, admissibility of evidence is to be decided by the judge. The weight to be given evidence, once admitted, is for the factfinder. Such evidence of the possibility of error goes only to the weight of the test results, not to their admissibility.[20]

In the instant case, Corporal Segrest testified that although he did not administer the number of passes that he was trained to administer, he nevertheless observed six out of six possible indicators of impairment. Given this evidence, the trial court was authorized to conclude that the officer substantially performed the test in accordance with his training and guidelines.[21] Duncan's arguments regarding the police lights, the insufficient number of passes, and the fact that the officer observed resting nystagmus before he administered the HGN test go to the weight of the evidence, not the admissibility.[22] Thus, the trial court did not err by denying Duncan's motion to exclude evidence of the HGN test.

(b) Duncan also appears to challenge the trial court's charge to the jury that

the HGN test is based on the well known, medically accepted principle that nystagmus can be caused by the ingestion of alcohol[ ]. The HGN test is an accepted common procedure that has reached a stage of verifiable certainty in the scientific community and is admissible once a sufficient foundation is laid as a basis upon which an officer can determine that a driver was impaired by alcohol. The

---

[20] (Citations and punctuation omitted.) *Hann v. State*, 292 Ga. App. 719, 723 (5) (665 SE2d 731) (2008).

[21] See id. (evidence that the officer failed to hold the pen a proper distance from the defendant's face and did not time the test properly did not render evidence of the HGN test inadmissible). Compare *Sultan v. State*, 289 Ga. App. 405, 407-408 (1) (657 SE2d 311) (2008) (trial court erred by failing to exclude an HGN test because the officer testified that he failed to perform a portion of the test that was intended to qualify the subject).

[22] See *Hann*, 292 Ga. App. at 723 (5); *Druitt v. State*, 225 Ga. App. 150, 153 (2) (483 SE2d 117) (1997) (evidence relating to error in administering a field sobriety test relates to weight rather than admissibility).

weight . . . the jury will place on such evidence considering the results and the manner in which the test was performed, is a matter entirely for you, the jury, to determine.

This charge is a correct statement of the law and has been approved by this Court.[23] Accordingly, we find no merit to Duncan's argument on this issue.

3. Finally, Duncan challenges the admission of the testimony of the State's expert witness, Deputy James Nash, who was certified through the "Drug Recognition Expert" ("DRE") program certification, arguing that "[DRE] expert evidence is not scientifically reliable[,] and Deputy Nash should not have been either admitted as an expert witness nor allowed to testify about the HGN test or the effect of prescription drugs on . . . Duncan." Specifically, Duncan contends that "DRE [is not] a reliable method of drug detection" and that "DRE testimony" is not admissible "as proof of driving under the influence," relying on *Harper*, in which the Supreme Court explained that before evidence based on a scientific principle or technique can be admitted, the party offering it must demonstrate with verifiable certainty that the tests or techniques are valid and capable of producing reliable results.[24]

Deputy Nash testified that he was certified as a DRE and had attended courses on traffic enforcement, DUI detection, field sobriety evaluations, and drug impairment detection. After viewing the DVD of the traffic stop, Deputy Nash concluded that Corporal Segrest did not properly administer the HGN test to Duncan. Deputy Nash further testified, however, that the improper administration of the test did not negate the fact that Corporal Segrest detected nystagmus in Duncan's eyes. On direct examination, Deputy Nash also explained that alcohol will cause horizontal nystagmus, but that Lorcet — a brand of hydrocodone — does not produce nystagmus detectable on an HGN test.

As set forth in Division 2 (a), Georgia courts have recognized the HGN test as "an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol," which meets the *Harper* standard.[25]

*YALE LAW LIBRARY*

---

[23] See *Duprel v. State*, 301 Ga. App. 469, 473 (2) (a) (687 SE2d 863) (2009) (approving a jury charge stating that errors in administering or interpreting field sobriety tests relate to the weight the jury gives to the evidence); *Baker v. State*, 252 Ga. App. 695, 704 (4) (556 SE2d 892) (2001); *Druitt*, 225 Ga. App. at 153 (2).

[24] See *Harper*, 249 Ga. at 526 (1).

[25] *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996). See *Tousley*, 271 Ga. App. at 878 (1) (b) (i); *State v. Pierce*, 266 Ga. App. 233, 237 (2) (596 SE2d 725) (2004); *Kirkland v. State*, 253 Ga. App. 414, 416 (559 SE2d 161) (2002).

It follows that the trial court did not err by admitting Deputy Nash's testimony that the HGN test will detect nystagmus caused by alcohol or that despite the fact that Corporal Segrest failed to properly perform the test, Corporal Segrest could still observe nystagmus.

Duncan also argues that the trial court erred by admitting Deputy Nash's testimony regarding the effects of prescription drugs on Duncan. But Deputy Nash's only testimony on this issue (with the exception of his testimony that hydrocodone did not cause nystagmus) was elicited on cross-examination by defense counsel. Pretermitting whether such testimony was admissible under *Harper*, "[i]t is well established that induced error is impermissible and furnishes no ground for reversal."[26]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 28, 2010 —
RECONSIDERATION DENIED JULY 16, 2010 — ▉▉▉▉▉▉

*George C. Creal, Jr.*, for appellant.
*Robert Stokely, Solicitor-General, Natalie Ashman, Sandra N. Wisenbaker, Amy B. Godfrey, Stephen J. Tuggle, Assistant Solicitors-General*, for appellee.

---

[26] (Punctuation omitted.) *Evans v. State*, 300 Ga. App. 180, 181 (684 SE2d 311) (2009).