**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2037. SULLIVAN v. THE STATE.

MILLER, Judge.

Following a bench trial, Michael Sullivan was convicted of driving under the influence of alcohol to the extent it was less safe to do so.[1] Sullivan appeals from the trial court's denial of his motion for new trial, contending that the evidence was legally insufficient; the trial court improperly considered similar transaction evidence; and the trial court improperly considered Sullivan's refusal to perform field sobriety tests. Finding no error, we affirm.

"On appeal from a criminal conviction that follows a bench trial, the defendant no longer enjoys a presumption of innocence, and we view the evidence in a light favorable to the trial court's finding of guilt." (Citation and punctuation omitted.)

---

[1] OCGA § 40-6-391 (a) (1).

*Hinton v. State*, 319 Ga. App. 673 (738 SE2d 120) (2013). "We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] This same standard applies to our review of the trial court's denial of [defendant's] motion for new trial." *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

So viewed, the evidence was that, at approximately 1:00 a.m. on October 2, 2009, Georgia State Trooper Osby, in a marked patrol car, was patrolling in Atlanta as a member of the Night Hawks, a DUI Task Force. In his career as a trooper and, previously, as a military police officer, Osby had handled approximately 1,000 DUI cases. At the intersection of Piedmont Road and Lindberg, Osby was stopped at the traffic light on Piedmont heading north when he noticed a black Nissan 350Z stopped across the intersection heading south. As the light turned green, the 350Z sped off at a high rate of speed, causing the car to spin out before gaining traction. Osby estimated the 350Z was traveling 50 to 55 mph in a 35 or 40 mph-speed-zone. Osby made a u-turn and pursued the car, which had sped away over a hill. Osby then stopped the 350Z and made contact with Sullivan. As Osby asked Sullivan for his driver's license, he noticed a strong odor of alcohol coming from the car and observed

_____

[2] 443 U. S. 307 (99 SCt. 2781, 61 LE2d 560) (1979).

that Sullivan's eyes were bloodshot and watery. Osby then asked Sullivan to get out of his car and walk toward Osby's patrol car. Sullivan was very slow to get out of his car and Osby noticed Sullivan's speech was slow and mumbled. When asked if he had been drinking prior to driving, Sullivan stated that he had a couple of beers prior to driving. Osby then asked Sullivan if he would submit to field sobriety tests, but Sullivan refused and said he knew he would be going to jail. Sullivan also refused the alcosensor test. Osby stated that, based on these facts and his training, it was his opinion that Sullivan was under the influence of alcohol to the extent it was less safe for him to drive.

Two prior incidents were admitted by the trial court as similar acts to show Sullivan's bent of mind and course of conduct. On July 6, 2006, around 12:30 a.m., Corporal Hight of the Doraville Police Department was entering I-285 from Buford Highway when he noticed a black Nissan 350Z pass him at a high rate of speed. Hight paced the 350Z for about a mile at 85 mph in a 55 mph speed zone. Hight activated his blue lights, but the 350Z continued on for a mile and a half before stopping. During this time, Hight observed that the driver appeared to be digging under the front seat. When the 350Z pulled over, Hight approached Sullivan's car from the passenger side and observed that Sullivan had bloodshot eyes, his speech was

3

mumbled, and there was an odor of alcoholic beverage coming from inside the car. Hight told Sullivan he could smell alcohol and asked if Sullivan had been drinking. Sullivan said he had had nothing to drink all night. Hight got Sullivan out of his car and asked him to submit to field sobriety tests, which Sullivan refused. While talking to Sullivan, Hight observed that he was swaying and unsteady on his feet and he continued to mumble. Hight read the implied consent warning to Sullivan, who refused to take the breath test. Because he was driving a Mustang police car, Hight called for a transport unit. Hight walked Sullivan over to the guardrail to wait and Sullivan nearly fell. Hight then searched Sullivan's car and found two cold bottles of beer under the driver's seat, one open and one unopened. Although Sullivan was charged with DUI, less safe, the charge was reduced to reckless driving.

On September 3, 2006, uniformed Hall County Sheriff's Deputy Orme was fueling his marked police car at a convenience store around 2:00 a.m. when he heard an engine revving and noticed a black Nissan 350Z pulling into the gas station. The 350Z passed within two arm lengths of Orme, with the driver's side nearest Orme. As the 350Z passed, Orme looked directly at Sullivan, who looked back at him. Orme noticed that Sullivan looked really sleepy and tired and his countenance was very droopy. As the 350Z was leaving the lot, Sullivan was gassing the car and spinning

4

his tires. Orme finished fueling his patrol car and was responding to another call when he encountered the 350Z sitting sideways in the road blocking both northbound lanes on Highway 60. Sullivan and another man were outside the vehicle walking around in the rain and discharge from a nearby business's sprinkler system. The driver's side door of the 350Z was open and the leather interior was getting soaked. Orme advised Sullivan of this and Sullivan shut the car door. Orme detected a strong odor of alcohol coming from Sullivan's mouth and breath and observed that both Sullivan and the other man were staggering around the car. When Orme asked Sullivan how much he had had to drink, Sullivan told him he was not driving, even when Orme said he had seen Sullivan driving. Sullivan refused the alcosensor test, saying he did not want to do any type of evaluations or incriminate himself. Orme arrested Sullivan and read the implied consent warning. Again, Sullivan refused the testing. Although charged with DUI, less safe, Sullivan was allowed to plead guilty to reckless driving.

1. In his first two enumerations, Sullivan contends that the trial court used the similar transaction evidence for an improper purpose and that, even prior to the

enactment of the new evidence code, effective January 1, 2013,[3] this Court should not allow consideration of such evidence for any purpose. We disagree.

The trial court conducted a hearing regarding the proffered similar transaction evidence which was offered by the State for the purpose of showing Sullivan's pattern of declining to take any testing when pulled over, i.e., to show his course of conduct and bent of mind. The trial court allowed the evidence for that limited purpose.

We review the trial court's findings of fact regarding similar transaction evidence under the clearly erroneous standard and we will not disturb the trial court's ultimate decision to admit evidence absent an abuse of discretion. See *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012) (for similar transaction evidence, we accept the trial court's factual findings unless they are clearly erroneous; the decision to admit similar transaction evidence is within the trial court's discretion and will not be disturbed absent an abuse of discretion).

---

[3] Ga. L. 2011, p. 99, § 101. The new evidence code shall apply to any motion made or hearing or trial commenced on or after January 1, 2013. Sullivan's trial was conducted on September 21, 2012. We decline Sullivan's request that we find all similar transaction evidence inadmissible for acts committed prior to enactment of this new code.

6

Sullivan argues that the factual differences in the two similar transactions and the charged offense make the allowance of the similar transactions improper.

> A transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences. Where, as here, such evidence is admitted for the purpose of showing bent of mind, a lesser degree of similarity is required than if introduced to prove identity.

(Citations and punctuation omitted.) *Collum v. State*, 281 Ga. 719, 723 (4) (642 SE2d 640) (2007).

> However, with regard to prior DUI convictions,

> [i]t is the simple act of driving while under the influence that establishes the commission of the crime. Evidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so.

(Citations, punctuation and footnote omitted.) *Shy v. State*, 309 Ga. App. 274, 276 (1) (709 SE2d 869) (2011). See, e.g., *Reese v. State*, 252 Ga. App. 650, 652 (2) (556 SE2d 150) (2001) (evidence of prior DUI offense is logically connected to pending charge and relevant to establish accused's bent of mind).

7

Here, we find the similar transactions were properly considered by the trial court because, in all three incidents, Sullivan declined to take any of the proffered tests, indicating his awareness that he was likely to fail those tests. As he stated when he refused the testing in the charged incident, he knew he would be going to jail. Similarly, in the Hall County incident, Sullivan refused the testing, saying he did not want to incriminate himself, and in the DeKalb County incident, Sullivan refused all testing.

2. Sullivan contends that the evidence was legally insufficient and the trial court improperly considered his refusal to submit to testing. We disagree.

OCGA § 40-6-391 (a) (1) provides that "[a] person shall not drive or be in actual physical control of any moving vehicle while: . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive[.]"

The State can prove this offense by presenting evidence that the defendant refused to take a breath test, as well as the officer's own observations regarding the defendant's behavior and the odor of alcohol on his person. See *Harris v. State*, 307 Ga. App. 847, 848 (706 SE2d 702) (2011); *Long v. State*, 271 Ga. App. 565, 567 (610

SE2d 74) (2004) (defendant's refusal to take state-administered chemical test admissible as circumstantial evidence of intoxication).

Here, late at night, Sullivan, stopped at a red light directly across from a marked state trooper vehicle, gunned his car and sped off in excess of the speed limit. When the trooper stopped Sullivan, he noted the strong odor of alcohol and Sullivan's bloodshot and watery eyes. Sullivan was very slow to exit his car when instructed to do so and spoke slowly or mumbled. Sullivan acknowledged having had a couple of beers, refused to submit to any testing, and said he knew he would be going to jail. In the experienced trooper's opinion, Sullivan was less safe to drive. See *Hinton*, supra, 319 Ga. App. at 675-676 (officer's testimony regarding defendant's speed, the smell of alcohol, the defendant's slurred speech and refusal to submit to state administered testing was sufficient for DUI-less safe conviction); *Duncan v. State*, 305 Ga. App. 268, 270 (1) (699 SE2d 341) (2010); *Crusselle v. State*, 303 Ga. App. 879, 880-881 (1) (694 SE2d 707) (2010).

Therefore, we find the trial court did not abuse its discretion in denying Sullivan's motion for new trial.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

9