**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 21, 2018**

# In the Court of Appeals of Georgia

A17A2085. CHERRY v. THE STATE.                          JE-064C

Ellington, Presiding Judge.

A jury found Anthony Cherry guilty of driving under the influence of alcohol, OCGA § 40-6-391 (a) (1). Following the denial of his motion for new trial, Cherry appeals, arguing that the trial court erred in admitting evidence of his refusal to submit to breath testing. He also contends that the trial court erred in admitting evidence of his horizontal gaze nystagmus ("HGN") test and in failing to exercise discretion in acting as the thirteenth juror. For reasons that follow, we find Cherry's arguments lack merit and affirm.

Viewed favorably to the verdict, the evidence shows that, on the night of October 1, 2015, Brian Head was driving when he saw another car in a ditch. Head called 911 and made sure the driver was okay. Head told the driver – later identified

as Cherry – that he had called police, and Cherry responded that there was no need to call police. A sheriff's deputy responded and discovered Cherry attempting to maneuver his car out of the ditch. According to the deputy, it was readily apparent that the car, which had sustained serious front-end damage, was not going to move.

The deputy called for a wrecker to tow the vehicle, and he asked Cherry to walk up the embankment while he was completing the accident report. As soon as the deputy was talking to Cherry face-to-face, away from the smell of the wrecked car, he noticed a "strong odor of [an] alcoholic beverage" and saw that Cherry had bloodshot eyes and was a bit unsteady on his feet. The deputy asked Cherry how much he had to drink, and Cherry responded that he had two glasses of wine. He then asked Cherry to perform the HGN field sobriety test to see if Cherry demonstrated signs of impairment. Cherry demonstrated six of six potential signs of impairment. Cherry told the deputy he had taken Prozac about eight hours before the accident took place. The deputy also had Cherry recite the alphabet from "e" to "u," and Cherry proceeded to recite the alphabet from "e" to "z." The deputy opted not to perform additional field sobriety tests due to road and weather conditions.

At this point, the deputy asked Cherry to perform a preliminary breath test. Cherry began physically backing away from the deputy and asking if he was going

to be arrested based on the breath test. Cherry refused to take the preliminary breath test, and the deputy arrested him for driving under the influence. The deputy then read Cherry his implied consent rights, and Cherry agreed to submit to a breath test. After being taken to jail, however, Cherry began expressing reservations about taking the test. At Cherry's request, the deputy re-read him his implied consent rights after which he refused to submit to the test. Based upon the evidence presented, the jury found Cherry guilty of driving under the influence of alcohol to the extent it was less safe for him to drive.

1. Cherry contends that, notwithstanding that he was advised of his right to refuse chemical testing under Georgia's Implied Consent law,[1] he refused to submit

---

[1]      [A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities.

OCGA § 40-5-55 (a). Under OCGA § 40-5-67.1 (b), drivers who are suspected of impairment are informed that Georgia law requires them to submit to state-administered chemical testing to determine if they are under the influence of alcohol. Among other things, a driver is expressly warned, "If you refuse this testing, . . . [y]our refusal to submit to the required testing may be offered into evidence against you at trial." OCGA § 40-5-67.1 (b) (2).

3

to a state-administered breath test in reliance on his Fourth Amendment protections against unreasonable searches and seizures and the corresponding protections of our state constitution.[2] Cherry argues that, because Georgia law precludes the admission as evidence of guilt of a defendant's exercise of his constitutional rights, the trial court erred in admitting evidence that he refused to submit to testing.

As the Supreme Court of Georgia recently explained, however, the Fourth Amendment permits a warrantless breath test as a search incident to a DUI arrest. *Olevik v. State*, 302 Ga. 228, 234 (2) (b) (806 SE2d 505) (2017).[3] In that case, the Supreme Court noted that Georgia courts generally interpret our state constitutional protections against unreasonable searches and seizures consistent with such protections under the Fourth Amendment. Id. Discerning no reason that our courts should interpret the corresponding provision differently in the context of DUI-related breath tests, the Supreme Court concluded that our Constitution also would allow a

---

[2] See Ga. Const. of 1983, Article I, Section I, Paragraph XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

[3] See *Birchfield v. North Dakota*, _ U. S. _ (V) (136 SCt 2160, 195 LEd2d 560) (2016).

4

warrantless breath test as a search incident to arrest. Id. Because a warrantless breath test is permitted as a search incident to a valid DUI arrest, securing a breath test after arrest pursuant to our Implied Consent law does not violate the Fourth Amendment. Id.

Under Georgia law, a defendant's refusal to submit to a breath test required under the Implied Consent law has specific, adverse evidentiary consequences. See *Hynes v. State*, 341 Ga. App. 500, 508 (801 SE2d 306) (2017) ("The case law interpreting implied consent laws demonstrates that the judiciary overwhelmingly sanctions the use of civil penalties and evidentiary consequences against DUI suspects who refuse to comply."); *Williams v. State*, 297 Ga. App. 626, 628 (677 SE2d 773) (2009) ("The implied consent statute grants drivers the right to refuse to take a state-administered test, with one of the consequences of exercising that right being that evidence of such refusal is admissible at trial."); OCGA § 40-6-392 (d) ("In any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him."). Because a breath test was permitted as a search incident to Cherry's DUI arrest, Cherry's refusal to take the state-administered breath test was not the exercise of the constitutional right against

5

unreasonable searches and seizures. See *Olevik v. State*, _ Ga. at _ (2) (b). Thus, the trial court did not err in admitting evidence that Cherry refused to take the breath test required under Georgia's Implied Consent law.[4]

2. Cherry contends that the trial court erred in admitting evidence of the HGN test. The deputy testified that Cherry told him that he had taken Prozac as medication earlier in the day. The deputy acknowledged that the Prozac could have affected the results of the HGN test. Cherry sought to exclude the HGN test because the deputy did not know whether the results of the test were due to Prozac or alcohol. In such case, Cherry argues, the results of the HGN test were not relevant.

---

[4] Following the filing of his initial brief, Cherry filed a response to the State's brief and set forth a new appellate argument: that he had not voluntarily relinquished his rights against self incrimination under Article I, Section I, Paragraph XVI of the Georgia Constitution. However, Cherry could not expand his claim of error in his reply brief. See *In re Whittle*, 339 Ga. App. 83, 84 n. 2 (793 SE2d 123) (2016); *Leonard v. State*, 325 Ga. App. 577 n.1 (754 SE2d 155) (2014). Cherry then filed a motion for permission to file a supplemental brief in which he implied that we should consider, in light *Olevik*, whether in refusing the breath test he exercised his constitutional rights against self incrimination under the Georgia Constitution. However, Cherry could not expand his claim of error through the supplemental brief. See, e.g., *Saint v. Williams*, 287 Ga. 746, 747 (2) (699 SE2d 312) (2010). Accordingly, we deny Cherry's motion for leave to file the supplemental brief.

A trial court enjoys broad discretion in determining the admissibility of evidence. See *Phillips v. State*, 251 Ga. App. 179, 180 (3) (553 SE2d 847) (2001). Even if the evidence alone is insufficient to establish guilt,

> evidence which in connection with other evidence tends, even slightly, to prove, explain, or illustrate a fact is probative and relevant. Doubt as to relevancy should be resolved in favor of admission and against exclusion, with the evidence's weight left to the jury.

(Citation omitted). Id. Here, the testimony as to the HGN test, which went to whether Cherry showed signs of impairment, was relevant, while Cherry remained free to attempt to persuade the factfinder that the testimony be afforded little weight under the circumstances. See OCGA § 24-4-401 ("relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.); *State v. Tousley*, 271 Ga. App. 874, 881 (1) (c) (611 SE2d 139) (2005) (after an HGN test is admitted, the defendant may attempt to persuade the factfinder not to assign the results much weight). Accordingly, the trial court did not abuse its discretion in admitting the evidence. See *Morrissette v. State*, 229 Ga. App. 420, 422 (1) (b) (494 SE2d 8) (1997) (even assuming appellant's performance on field sobriety

tests was influenced by his injuries, it would not have affected the admissibility of the evidence).

3. Following his conviction, Cherry moved for a new trial on general grounds. After reviewing Cherry's motion, the transcript of the trial, and the argument of both parties, the trial court denied the motion without discussion. On appeal, Cherry argues that the order shows that the trial court failed to exercise the requisite discretion required of it in acting as the "thirteenth juror." "But when denying a motion for new trial, the trial court need not explicitly speak of its discretion with respect to the general grounds, and unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it." *Murdock v. State*, 299 Ga. 177, 178 (2) (787 SE2d 184) (2016). Accordingly, this argument lacks merit. See id.

*Judgment affirmed. Andrews and Rickman, JJ., concur.*