**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

July 20, 2023

# In the Court of Appeals of Georgia

A23A1032. GARRISON v. THE STATE.

LAND, Judge.

A jury convicted Misty Michelle Garrison of DUI less safe (combined influence), DUI less safe (alcohol), failure to maintain lane, and improper tires. Following the denial of her motion in arrest of judgment, Garrison appeals, arguing that the trial court erred in denying her motion. She also contends that the trial court erred in instructing the jury that they could consider her refusal to submit to a state administered blood test and in admitting a state trooper's testimony regarding field sobriety testing. We disagree and affirm.

"On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict." (Citation omitted.) *Stephens v. State*, 247 Ga. App. 719, 719

(545 SE2d 325) (2001). We neither weigh the evidence nor judge witness credibility, but determine only "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2D 560) (1979).

So viewed, the record shows that, around noon on November 15, 2018, a Union County sheriff's deputy and a Georgia State Patrol trooper responded to a single vehicle wreck in Union County and discovered that a truck driven by Garrison had crashed into a utility pole, snapped the pole in half, and come to rest on top of the broken pole. While talking with Garrison, the trooper smelled alcohol coming from Garrison's breath. Garrison initially denied drinking in the past 24 hours, but later admitted to drinking the night before and to taking prescription medication.

The trooper then began a DUI investigation and had Garrison perform field sobriety tests. Garrison attempted to stand on one leg and "was wobbly." At trial, the trooper explained that he had completed a 24-credit hour class on field sobriety as well as a class in advanced roadside impairment tests. The trooper then defined the horizontal gaze nystagmus (HGN) test for the jury, which shows an involuntary

jerking of the eyes in impaired persons, and described his standard procedure for conducting the test, which he estimated he had performed between 500 and 800 times. The trooper testified that Garrison showed six out of six clues, which indicated that she was impaired. At trial, Garrison's objection that the State had not properly established the proper foundation to admit the trooper's testimony regarding the HGN test was overruled.

The trooper then placed Garrison under arrest for DUI and read her Georgia's implied consent notice, which included a request that she take a blood test. Garrison refused and became argumentative. Garrison was arrested for DUI less safe, failure to maintain lane, and violation of tire requirements, and the State filed an accusation charging Garrison with these offenses on May 29, 2019.

More than two years after the incident, on January 12, 2021, the State filed an amended accusation charging Garrison with DUI (less safe) (combined influence) (OCGA § 40-6-391 (a) (4)), DUI (less safe) (alcohol) (OCGA § 40-6-391 (a) (1)), failure to maintain lane, and improper tires. Garrison did not file a pre-trial demurrer objecting to the amended accusation. After a jury trial in August 2022, Garrison was found guilty on all counts. Garrison filed a motion in arrest of judgment that same day,

contending that the amended accusation was void because it was filed after the statute of limitation had expired. On August 31, 2022, the trial court held a hearing on Garrison's motion (of which no transcript appears in the record), and on September 1, the trial court issued an order denying the motion, stating that it was "rel[ying] on the March 14, 2020 Order Declaring Statewide Judicial Emergency and the July 10, 2020 Fourth Order Extending Declaration of the Statewide Judicial Emergency issued by Chief Justice Harold Melton of the Georgia Supreme Court."[1] Garrison then filed a notice of appeal.[2]

1. Garrison argues that the trial court erred in denying her motion in arrest of judgment because the amended accusation substantially amended the original charges and was filed outside the two-year statute of limitation, and accordingly, the State was required to plead the COVID-19 tolling provision in its amended accusation and prove at trial that the tolling provision applied. We disagree.

---

[1] On December 20, 2022, the trial court issued an amended order on Garrison's motion for arrest in judgment to correct a scrivener's error.

[2] Under OCGA § 5-6-38 (c), the timely filing of a motion in arrest of judgment tolls the time for filing a notice of appeal.

4

"A motion in arrest asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of a crime." (Citation omitted.) *Pauley v. State*, 355 Ga. App. 47, 56 (3) (842 SE2d 499) (2020). If it appears on the face of an indictment that the statute of limitation period has run, the indictment is subject to a motion for arrest of judgment. See *State v. Barker*, 277 Ga. App. 84, 87 (3) (625 SE2d 500) (2005).

(a) *The amended accusation.* "A count contained in a subsequent indictment relates back to the date of the prior indictment for purposes of the statute of limitations if: (1) the prior indictment was timely; (2) the prior indictment is still pending; and (3) the later indictment does not broaden or otherwise substantially amend the original charges." *State v. Outen*, 296 Ga. 40, 45 (3) (764 SE2d 848) (2014). "[W]hether an amendment to an accusation or indictment after expiration of the statute of limitation broadens or substantially amends the original charge is undoubtedly an issue of law." *Barghi v. State*, 334 Ga. App. 409, 411 (1) (779 SE2d 373) (2015). In making this determination, "the court should consider whether the additional pleadings allege violations of a different statute, contain different elements,

rely on different evidence, or expose the defendant to a potentially greater sentence." (Citation and punctuation omitted.) *Outen,* 296 Ga. at 46 (3).

Here, the original accusation was timely filed and charged Garrison with violating OCGA § 40-6-391 (a) (1) for driving under the influence of alcohol, OCGA § 40-6-48 for failure to maintain her lane, and OCGA § 40-8-74 for improper tires. The amended accusation, which was filed more than two years after the incident,[3] alleged an additional violation of a different subsection of the DUI statute, OCGA § 40-6-391 (a) (4), for driving under the influence of alcohol and drugs (combined influence) and relied on different evidence (that Garrison was driving under the influence of prescription medication in addition to alcohol), and therefore substantially amended the prior accusation. Compare *Barghi*, 334 Ga. App. at 411-412 (1) (amended accusation that "made only slight changes to the wording of the allegations . . . did not commence a new prosecution"). Therefore, the amended accusation did not relate back to the original accusation.

(b) *The COVID-19 emergency orders.* Garrison argues that because the original statute of limitations had expired when the State filed the amended accusation, the

---

[3] The statute of limitation for misdemeanors is two years. See OCGA § 17-3-1.

State was required to allege the COVID-19 "tolling provision" in each count of the accusation to show that the charged offenses were not time-barred. We disagree.

Statutes of limitation are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." (Citation and punctuation omitted.) *Riley v. State*, 305 Ga. 163, 167 (3) (824 SE2d 249) (2019). Thus, Georgia courts have long held that "[i]n a criminal statute of limitation only an exception or condition contained within the statute will toll its operation[.]" *Outen*, 296 Ga. at 43 (2). For example, where the identity of a defendant is unknown, the statute of limitation is tolled until the State has probable cause to authorize the lawful arrest of that person for the crime charged. See *Riley*, 305 Ga. at 169 (3), citing OCGA §17-3-2 (2). In that instance, the State may file an amended accusation after the statute of limitations has expired, but "must specifically allege in each count of the indictment the applicable tolling provision or exception to the statute of limitation in order to show that the charged offense is not time-barred." (Citations omitted). *Lynch v. State*, 346 Ga. App. 849, 856 (3) (a) (i) (815 SE2d 340) (2018). According to our Supreme Court, the purpose of this rule is

7

"to *notify the defendant* [so] that he may be prepared to meet all the allegations on the part of the State, at the trial." (Emphasis supplied.) *McLane v. State*, 4 Ga. 335, 341 (1848). Thus, "an exception to the statute of limitation is a 'material allegation' which must be alleged in the indictment."[4] *Taylor v. State*, 306 Ga. 277, 286 (3) (b) (830 SE2d 90) (2019), quoting *McLane*, 4 Ga. at 342.

On March 14, 2020, prior to the expiration of the statute of limitation in this case, the Supreme Court of Georgia issued an order declaring a statewide judicial emergency related to the COVID-19 pandemic. The order was issued pursuant to Georgia's Emergency Management Act,[5] which "shall be construed liberally in order

---

[4] In contrast, our Supreme Court has held that OCGA § 17-3-3, which operates to extend the statute of limitations after a timely indictment is quashed or nol prossed, "provides an extension of the statute of limitation period and not an exception to it that must be pled in the indictment." *Sallie v. State*, 276 Ga. 506, 513-514 (12) (578 SE2d 444) (2003).

[5] Pursuant to OCGA § 38-3-62,
[a]n authorized judicial official in an order declaring a judicial emergency, or in an order modifying or extending a judicial emergency order, is authorized to suspend, toll, extend, or otherwise grant relief from deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to: (1) A statute of limitation . . . .

to effectuate [its] purposes." OCGA § 38-3-6. The judicial emergency order provided that

> during the period of this Order, the [Chief Justice of the Supreme Court of Georgia] hereby *suspends, tolls, extends, and otherwise grants relief* from any deadline or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to any: (1) statute of limitation . . . .

(Emphasis supplied.) Central to this case, the order stated that it was being provided to "the judges and clerks of all courts in this State," to "the media, the State Bar of Georgia," and to a list of officials and entities, and that notice to these officials and entities "*shall constitute sufficient notice of the issuance of this Order to the affected parties, counsel for the affected parties, and the public.*" (Emphasis supplied.) The emergency order subsequently was extended several times.[6]

---

The Chief Justice of the Georgia Supreme Court is an "[a]uthorized judicial official." See OCGA § 38-3-60 (1) (A).

[6] The Chief Justice's Orders are available at
https://www.gasupreme.us/court-information/court_corona_info/.

On April 6, 2020, the Court issued further guidance on "Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency" as follows:

> [T]he tolling of a statute of limitation suspends the running of the period of limitation, but it does not reset the period of limitation. If the period of limitation for a particular cause of action commenced prior to March 14, 2020 — that is, if the "clock" had started to run before the entry of the Chief Justice's order — the running of the period of limitation was suspended on March 14, and the running of the period will resume when the tolling provision of the March 14 declaration has expired or is otherwise terminated . . . . [W]hatever time remained in the period of limitation as of March 14 will still remain when the tolling provision of the March 14 declaration has expired or is otherwise terminated.

Accordingly, although the statute of limitation in the instant case would have originally expired on November 18, 2020, the COVID-19 judicial emergency orders suspended the running of the limitation period such that the statute of limitation did not expire until after the State filed its amended accusation on January 12, 2021.

Garrison, her counsel, and the public were on notice of the suspension of the statute of limitation when the amended accusation was filed, and we therefore conclude that the State was not required to further notify Garrison of the COVID-19

tolling provision in the amended accusation. Thus, the trial court did not err in denying Garrison's motion for arrest of judgment.

2. Garrison argues that the trial court erred in instructing the jury that they could infer the presence of alcohol and drugs from Garrison's refusal to submit to a blood test because Georgia's implied consent laws, OCGA §§ 40-5-55, 40-5-67.1, and 40-6-392, are unconstitutional to the extent that they allow an individual's refusal to submit to a state administered blood test to be offered against that individual at trial. We disagree.

During the charge conference, Garrison's trial counsel made only a "general objection" to the jury instruction on inferring the presence of alcohol and drugs from Garrison's refusal to submit to a blood test. Garrison's trial counsel did not object to the charges as read to the jury. She "therefore failed to preserve this claim for ordinary appellate review. However, the alleged error is still reviewed for plain error on appeal." *Grullon v. State*, 313 Ga. 40, 45 (2) (a) (867 SE2d 95) (2021).

Our Supreme Court has established the following test for determining whether there is plain error:

> First, there must be an error or defect – some sort of deviation from a
> legal rule – that has not been intentionally relinquished or abandoned,

i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis in original.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). "[A]s our Supreme Court has emphasized, satisfying the plain-error standard is difficult, as it should be. And the burden of establishing plain error falls squarely on the defendant." *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017).

"[A]n error is plain only if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." *Davis v. State*, 312 Ga. 870, 874 (2) (866 SE2d 390) (2021). Here, Garrison's objection to the jury instruction relies on her assertion that Georgia's implied consent laws, OCGA §§ 40-5-55, 40-5-67.1, and 40-6-392, are unconstitutional to the extent that they allow an individual's refusal to submit to a state administered blood test be offered against

them at trial.[7] Our Supreme Court, however, has yet to decide this issue. See *State v. Randall*, 315 Ga. 198, 200 (1) (880 SE2d 134) (2022) (vacating trial court's ruling that to the extent that OCGA §§ 40-5-67.1 (b) and 40-6-392 (d) allow for the introduction of evidence against an accused in a DUI prosecution, they violate state and federal due process guarantees, but "express[ing] no opinion about the important and difficult constitutional questions that remain unresolved"). Given the lack of authority supporting Garrison's position, there was no clear or obvious error in the trial court's instruction to the jury. See *Beasley v. State*, 305 Ga. 231, 236 (3) (824 SE2d 311) (2019) (no obvious error where Georgia Supreme Court had not decided the issue on appeal and prior Court of Appeals case on issue remained good law).

3. Garrison argues that the trial court erred in admitting testimony from the trooper regarding the HGN test because the State failed to establish the proper foundation, and that even if properly admitted, the HGN test could only apply to alcohol impairment. We disagree.

In Georgia,

---

[7] Garrison did not challenge the admission of her refusal to take a blood test as unconstitutional at any point before or during trial.

> [t]he foundation for evidence based on a scientific principle or technique requires two findings regarding the evidence's reliability: such evidence is admissible upon a showing by the party offering the evidence that (1) the general scientific principles and techniques involved are valid and capable of producing reliable results and (2) the person performing the test substantially performed the scientific procedures in an acceptable manner.

(Footnote omitted.) *Duncan v. State*, 305 Ga. App. 268, 270-271 (2) (699 SE2d 341) (2010). The HGN test is generally accepted to have "reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." *Spencer v. State*, 302 Ga. 133, 136 (805 SE2d 886) (2017). Nevertheless, the State "must still satisfy the second component of the foundation, that is, that the tester substantially performed the scientific procedures in an acceptable manner." (Punctuation and footnote omitted.) *Duncan*, 305 Ga. App. at 271 (2).

When deciding whether an HGN test was administered properly under law enforcement guidelines, Georgia "courts have considered whether the arresting officer was trained sufficiently to give the test, experienced in administering the test, administered the test according to the standardized techniques and scored or

14

interpreted the test properly." *Duncan*, 305 Ga. App. at 272 (1). "HGN testing, although far from a complex procedure, may be subject to human error in its administration or interpretation; however, such potential for error does not impact on the validity of the HGN test; no procedures are infallible." (Citation and punctuation omitted.) *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996). However, "[a]n accused may always introduce evidence of the possibility of error. Such evidence would relate to the weight rather than the admissibility" of the HGN test. Id.

Here, the trooper testified that he had extensive training in administering field sobriety tests, that he had performed the HGN test many times, and he described his standard procedure in administering the test. Given this evidence, "the trial court was authorized to conclude that the [trooper] substantially performed the test in accordance with his training and guidelines." (Footnote omitted.) *Duncan*, 305 Ga. App. at 272 (1) (a). Garrison's assertion that the HGN test did not show she was impaired by drugs goes to the weight of the evidence, not its admissibility. See *Cherry v. State*, 345 Ga. App. 409, 412 (2) (813 SE2d 408) (2018) ("the testimony as to the HGN test, which went to whether [the defendant] showed signs of impairment, was

relevant, while [the defendant] remained free to attempt to persuade the factfinder that the testimony be afforded little weight" due to the defendant's use of prescription medication). Thus we find no error.

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*